*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 05-3708

JAMES M. FUNK,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio.
No. 02-00708—James G. Carr, Chief District Judge.

Argued: June 23, 2006

Decided and Filed: February 22, 2007

Before: BOGGS, Chief Judge; BATCHELDER, Circuit Judge; BELL, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Joseph R. Wilson, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellant. Spiros P. Cocoves, Toledo, Ohio, for Appellee. **ON BRIEF:** Joseph R. Wilson, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellant. Spiros P. Cocoves, Toledo, Ohio, for Appellee.

_____

## OPINION

_____

ALICE M. BATCHELDER, Circuit Judge. The government appeals the 150-month sentence imposed by the district court after we remanded James Funk's case for re-sentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Funk*, 124 F. App'x 987, 991 (6th Cir. 2005) (unpublished) (remanding pursuant to *United States v. Barnett*, 398 F.3d 516, 527-28 (6th Cir. 2005)). Because we conclude that the district court considered "impermissible factors" and failed adequately to justify its substantial downward variance from the applicable guidelines range, we again vacate Funk's sentence and remand for re-sentencing.

_____

[*] The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

1

# I.

Funk and several others were part of a conspiracy to bring drugs from Florida and Texas to the Marion, Ohio, area from 1998 to 2001. In 2002, Funk and seven of his cohorts were charged in a one-count indictment with conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment specified that beginning in 1998 the defendants conspired to obtain over 15 kilograms of cocaine and over 2,000 pounds of marijuana and to distribute it in the Marion area. All of Funk's co-conspirators pled guilty, but Funk went to trial. While most of the trial testimony focused on marijuana trafficking, one witness testified that in 1998 he had on one occasion purchased eleven ounces of cocaine from Funk for $9,000 in Marion County, and on each of three other occasions, he had purchased one ounce of cocaine from Funk.

The jury found Funk guilty. The pre-sentence investigation report ("PSR") calculated Funk's base offense level at 26, based on the possession of between 100 and 400 kilograms of marijuana, *see* U.S.S.G. § 2D1.1(c)(7), and recommended a career offender enhancement pursuant to U.S.S.G. § 4B1.1(a). Funk's final offense level, therefore, was 34 and, with a criminal history category of VI, his guidelines sentencing range was 262 to 327 months' imprisonment. Funk objected to one aspect of the PSR not relevant here, and the district court, treating the sentencing guidelines as mandatory, sentenced Funk to 262 months' imprisonment. On appeal, we affirmed Funk's conviction, but vacated his sentence and remanded the case to the district court for re-sentencing. *See Funk*, 124 F. App'x at 991.

The district court re-sentenced Funk on April 25, 2005. The court utilized the same PSR – which all parties at that point agreed had correctly calculated the guidelines range – but Funk now argued that utilizing the career offender enhancement made the sentence unreasonably high. He therefore requested a sentence within the guidelines range as it would have been calculated absent the career offender enhancement. The district court recognized that Funk was a career offender and that the applicable range was 262-327 months' imprisonment, and stated that it would give presumptive weight to the guideline range, commenting that "marijuana trafficking is an extremely serious offense." The following exchange then took place:

> THE COURT: . . . Nonetheless, I take note that as I recall the activities on [sic] which the defendant and his cohorts participated did not involve cocaine or heroin or crack cocaine or methamphetamine or ecstasy or any of that sort of stuff, that did not involve the use of firearms, so far as we are aware. Is that correct Ms. [AUSA] Dustin?
>
> Ms. ROTELL DUSTIN: No, your Honor.
>
> THE COURT: People weren't shot at or –
>
> MS. ROTELL DUSTIN: No, your Honor.
>
> THE COURT: And, Agent, is that correct, to your understanding, the display and use of weapons was not part of the –
>
> AGENT APPLE: That's correct.
>
> THE COURT: – conspiracy? Okay. So that the seriousness of the offense is moderated by those factors. Now, of course, had those factors been present, they would have made possibly the conviction and guidelines more severe.

But I think it is noteworthy and fair to give the defendant credit for the somewhat unusual circumstance where apparently firearms were not a part of this activity – of course, certainly not to the extent that it became known during the course of a very lengthy and successful investigation – because all too often, as we are all aware, firearms are the tools of a drug dealer's trade and with harmful consequences very all too often for people involved, innocent people, and law enforcement officers.

I think a sentence somewhat within the guideline range, were there not a career offender finding, would be appropriate also, because I think that a sentence of that length more, indeed, potentially concerning more than ten years would promote respect for the law and emphasize the seriousness of the offense.

I think it's appropriate under all the circumstances to consider something in that range to provide a just punishment, one that incapacitates this defendant and hopefully deters him in the future, while concurrently being viewed, I believe, by the general public fully aware of all the facts and circumstances as one which appropriately fits the offense and the offender.

I believe and, certainly, I hope, but I believe that by having Mr. Funk spend about ten years or more in prison may finally cause the flame to go out. Now, Mr. Funk, you've spent your – almost your entire adult life bumping into the law in one way or another, and I hope that losing maybe a third of the years that you have left to you will finally cause you, on returning to society, to be then and foreverafter [sic] a law-abiding citizen. And, candidly, I'm taking that into some consideration.

You'll be 50-some years old when you come out. And I've often expressed the view that I think there does come an age when many people – no matter what their past and the seriousness of their activities and how extensive it's been – the time finally comes to say, Hey, not much time is left to me and I'd rather spend it outside than inside.

And, also, I think a sentence of that length within the guideline range would be an adequate deterrence to others in your situation, including those considerably younger than yourself. I think anybody who might become aware of the fact that [even only] selling marijuana can get you ten years or more in prison, I would hope that that would be an adequate public deterrence.

And, finally, in terms of the need to protect the public, I really am confident that upon your release the likelihood that you would resume this kind of activity or, indeed, any other unlawful activity would be very, very slight. And, on the other hand, to apply the guideline range that would be proscribed [sic] under the career offender – with career offender enhancement, of 262 months, that in your case could well serve – prove to be a life sentence.

And I think that being so, it certainly would leave you, in any event, with very little time left to enjoy freedom. And I think that a sentence of that severity, even taking into account the extensiveness, frequency, and seriousness of your prior criminal conduct in this offense, would simply not be proportionate to the crime that you committed that brings you here. And I'm not so sure that a sentence of that length would promote respect for the law.

The court went on to note its belief that the public is ahead of the courts and Congress in determining which sentences are excessive and unfair, and how in this case a sentence within the properly calculated guideline range would "promote disrespect for the law" because of its

excessiveness. It concluded that it was "inclined to apply the guideline range as if the career offender enhancement were not there."

The government objected to this treatment, arguing that a sentence within the properly calculated guideline range would be a reasonable sentence because Funk is in fact a career offender, "[h]is criminal history shows nothing but disrespect for the law," and an examination of his criminal history showed that there is a need to protect the public from more than just marijuana trafficking. It also noted that a sentence that did not take into account the career offender enhancement would "result in a disparity among other defendants who have been sentenced for marijuana conspiracies or other conspiracies involving this amount of drugs and this type of record. They have received longer sentences because of the fact they're career offenders."

The district court considered this argument a "fair point," but challenged the government to give examples of sentences out of line with that which it intended to give Funk. The government – on admittedly short notice – could not do so, and an extensive discussion ensued regarding how the sentencing guidelines may or may not have already taken into account recidivism by considering the defendant's criminal history. Considering the guideline range without the career offender enhancement – which yielded an offense level of 26 rather than 34, and a sentencing range of 120 - 150 months rather than 262-327 months – the district court pronounced a sentence of 150 months in prison, which it characterized as "the high end of the guideline range." In the amended judgment entered on April 25, 2005, the district court listed Funk's guideline range as 262-327 months' imprisonment, and stated its reasons for giving Funk a downward variance:

> The Court, pursuant to 18 U.S.C. § 3553(a), did not sentence the defendant under the advisory guideline range. The Court found that the career enhancement was excessive and unreasonable. In making that determination, the Court found:
>
> 1.       that even though the underlying charge was marijuana, which is an extremely serious offense, the defendant and his cohorts did not participate in cocaine, heroin, ecstasy, methamphetamine or firearms;
> 2.       a term of 150 months provides a just punishment, one that incapacitates this defendant and deters the defendant in the future[;]
> 3.       a term of 150 months appropriately fits this defendant and his offense;
> 4.       [a term of 150 months] provides an adequate public deterrence and safety[.]

Both Funk and the government timely appealed, though Funk subsequently withdrew his appeal, leaving only the government's appeal for our consideration.

## II.

The *Booker* Court instructed appellate courts to review a sentence imposed under an advisory guidelines scheme for reasonableness. *See Booker*, 543 U.S. at 261. We have stated that review for reasonableness requires an appellate court

> to consider not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination. Thus, we may conclude that a sentence is unreasonable when the district judge fails to "consider" the applicable Guidelines range or neglects to "consider" the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.

*United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). In *Webb*, we also acknowledged that a district court will act unreasonably if it bases the sentence on impermissible factors. *Id.* at 385.

Moreover, a district court must acknowledge "the defendant's applicable Guidelines range" as well as discuss "the reasonableness of a variation from that range." *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005).

Further, we have held that a sentence within the applicable guidelines range carries with it a rebuttable presumption of reasonableness, *see United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), but a sentence outside that range – although not entitled to the presumption – is not presumptively *un*reasonable. *See United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006). Finally, in accordance with the opinions of several of our sister circuits, we have said that the farther the sentencing court varies from the guidelines range one way or another, the more compelling the justification for that variance must be. *See United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006) ("And like every court of appeals to consider the question, we take the view that when the district court independently chooses to deviate from the advisory guidelines range (whether above or below it), we apply a form of proportionality review: 'the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a)' must be." (quoting *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005))).

Although the district court stated at the sentencing hearing that it was imposing a sentence at the "high end" of the guidelines range, it is plain that the court was not referring to the guidelines range that was in fact applicable to Funk. Such a sentence is not entitled to a presumption of reasonableness because it is not the defendant's properly calculated guidelines range. *See Williams*, 436 F.3d at 708 ("We now join several sister circuits in crediting sentences *properly calculated* under the Guidelines with a rebuttable presumption of reasonableness.") (emphasis added). Complicating the matter, the district court later entered an amended judgment, stating that the appropriate guidelines range was 262 - 327 months; stating that it would not sentence under that range because it included the career offender enhancement which the court viewed as "excessive and unreasonable"; and imposing instead the same sentence it had arrived at using the guidelines calculation that did not include that enhancement. Under either of the district court's rationales, this sentence is not one that is within the properly calculated guideline range, and we must therefore determine, without the aid of the presumption, whether the sentence is reasonable.

The properly calculated guidelines range in this case called for 262-327 months' imprisonment. In determining whether the sentence actually imposed by the district court – 150 months – is reasonable, we must look first to see whether it was based on impermissible factors, and second, whether it is substantively reasonable in light of the § 3553(a) factors. And as we said in *Davis*, "because one of those factors requires consideration of the guidelines sentencing range, § 3553(a)(4)[1], and because the guidelines ultimately purport to account for most, if not all, of the § 3553(a) factors, . . . our review starts with the sentencing estimate provided by the Sentencing

---

[1] Section 3553(a)(4) provides:
(a) Factors to be considered in imposing a sentence -- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --
   (4) the kinds of sentence and the sentencing range established for --
     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
       (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
       (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced[.]
18 U.S.C. § 3553(a)(4)(A).

Commission for certain types of crimes and certain types of criminals." *Davis*, 458 F.3d at 496 (internal citations omitted).

In its amended judgment, rather than adopting its statement at the sentencing hearing that a sentence within the properly calculated guideline range would, because it was too harsh, promote disrespect for the law, the district court said that it would not sentence Funk within the appropriate range because the career enhancement was "excessive and unreasonable." The court gave four reasons for making that determination: the conspiracy did not involve cocaine or guns; a sentence of 150 months – within the guidelines range if the career offender provisions were not taken into account – would be just, and would incapacitate Funk and deter him from future criminal activity; a sentence of 150 months would be appropriate to the defendant and to the offense; and a sentence of 150 months would provide adequate public deterrence and safety. In essence, then, the court disregarded the "type" of criminal Funk is, *see Davis*, 458 F.3d at 496 ("our review starts with the sentencing estimate provided by the Sentencing Commission for certain types of crimes and certain types of criminals"), and sentenced him as if he were not a career offender, and particularly, as if he did not have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3).

The district court's first reason for finding the enhancement excessive was that the conspiracy for which Funk was convicted did not involve cocaine or firearms. The finding that the conspiracy did not involve the use of guns appears to be correct, and, while the finding that cocaine was not involved is clearly not correct, we agree with Funk that by failing to object to that finding at the sentencing hearing, the government has waived any objection to it. But that does not end the matter. It is clear that, had Funk and his cohorts used guns in support of their trafficking activities, the properly calculated guidelines sentence would have been *greater* than the sentencing range of 262-327 months, which the district court acknowledged in its amended judgment was the appropriate guidelines range. It therefore defies logic to *reduce* the defendant's sentence because of the *absence* of this factor; the properly calculated guidelines range has already taken into account its absence. *See United States v. Duhon*, 440 F.3d 711, 718-19 (5th Cir. 2006) (rejecting a downward variance for a defendant convicted of possession of child pornography on the basis that the defendant did not attempt to solicit a child because "[h]ad [the defendant] solicited children for sex . . . the sentencing range would have been . . . more than five times his actual Guideline sentence"); *United States v. McMannus*, 436 F.3d 871, 875 (8th Cir. 2006) (rejecting a sentence of 120 months' imprisonment, 142 months below the guidelines range, where the variance was granted "primarily based on the fact that [the defendant had] no prior criminal history points" because the lack of criminal history points was already taken into consideration in calculating the applicable guidelines range).

The remaining reasons set out in the amended judgment for finding the enhancement excessive are simply a reiteration of the court's view that a sentence of 150 months would be sufficient. The court's soliloquy at the hearing provides some greater explanation: it would promote respect for the law and emphasize the seriousness of the offense; it would allow Funk to be released at an age when he would be less likely to commit any further crimes; and it would be sufficiently severe to deter him – and younger people – from committing other crimes and would therefore protect the public. Finally, the court said that 262 months' incarceration would "prove to be a life sentence," which is disproportionate to the crime committed "even taking into account the extensiveness, frequency, and seriousness" of Funk's prior criminal conduct, and that the public would be disrespectful of the law if such a harsh guidelines sentence were imposed.

We think it is clear that in sentencing Funk as if he were not a career offender, the district court erred. We find the Eleventh Circuit's opinion in *United States v. Williams*, 456 F.3d 1353 (11th Cir. 2006), instructive. In that case, the district court had stated several reasons for sentencing the defendant well below the applicable advisory guidelines range, including that it would not

sentence the defendant as a career offender because it viewed the career offender enhancement as "a totally inappropriate way to consider the individual nature of an offense or a defendant's individual background." *Id.* at 1369. The Eleventh Circuit held that "[t]his, too, was error."[2] *Id.* Noting that U.S.S.G. § 4B1.1 is the result of Congress's policy – set out in 28 U.S.C. § 994(h) – requiring that the Sentencing Commission ensure that certain kinds of repeat offenders receive sentences at or near the statutory maximums, the court held:

> Congress's goal was not simply to punish offenders with prior criminal histories more severely than first time offenders; Congress also wanted to target specific recidivism, particularly repeat drug offenders. There is no question Williams is a recidivist drug dealer. To the extent the district court believed Williams' prior criminal history was adequately taken into consideration in his criminal history category of VI, it ignored Congress's policy of targeting recidivist drug offenders for more severe punishment. The district court, therefore, erred in mitigating Williams' sentence based on its disagreement with the career offender Guidelines provision.

*Williams*, 456 F.3d at 1370.

We think the Eleventh Circuit's analysis is correct. The district court explicitly refused to sentence Funk as a career offender because it viewed that enhancement as "excessive and unreasonable." But the district court's disagreement with Congress as to what constitutes an appropriate sentence for a repeat offender of the kind described by U.S.S.G. § 4B1.1 is a policy matter, and not a permissible factor upon which to base a sentencing determination.[3] *See Mistretta v. United States*, 488 U.S. 361, 364 (1989) ("Congress, of course, has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control.") (internal citation omitted); *United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006) (noting that "§ 3553(a) . . . does not include a factor such as 'the judge thinks the law misguided'").

The guidelines range applicable to Funk's case – 262-327 months' incarceration – is indeed very high. But in large part that is precisely because he is a career offender, and sentencing him as if he were not necessarily runs afoul of the mandate that courts impose similar sentences for "the applicable category of offense committed by the applicable category of defendant."[4] *See Booker*,

---

[2] By finding error in this "too," the court was referring to its holding in the first part of the opinion that the district court had erred in mitigating the defendant's sentence based on its disagreement with Congress's policy decision to penalize drug offenses involving crack cocaine more severely than powder cocaine. The court held that "[f]ederal courts are not at liberty to supplant this policy decision. . . . This is simply an impermissible sentencing consideration." *Williams*, 456 F.3d at 1367.

[3] The district court in this case did not find that there was a genuine question as to whether Funk is in fact a career offender – all parties and the court recognized that he is. Nor did the court offer any justification for refusing to apply the enhancement other than the generic criticism that it is "excessive," and the court's opinion that a sentence without the enhancement "would promote respect for the law." Neither reason is anything more than a disagreement with Congress about what an appropriate sentence for a repeat offender meeting the criteria of U.S.S.G. § 4B1.1 would be.

[4] It is not necessary for a party to produce specific examples of sentences imposed in other cases to show that a sentence well outside the applicable guidelines range will create sentencing disparities; while a broader range of sentences can be expected for like offenses committed by like defendants in the post-*Booker* world than was previously expected, *see Booker*, 543 U.S. at 252-53; *Foreman*, 436 F.3d at 644, one of the goals of the sentencing guidelines is still to create some degree of uniformity. *See* U.S.S.G. § 1A1.1, p.s. (noting that in passing the Sentencing Reform Act of 1984, "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders"); *United States v. Jackson*, 401 F.3d 747, 749 (6th Cir. 2005) (noting that "[a] paramount policy of the Guidelines is the promotion of reasonable uniformity in sentencing"

543 U.S. at 259 (quoting 18 U.S.C. § 3553(a)(4)).  As the Sentencing Commission has explained in the Commentary to § 4B1.1:

> Section 994(h) of Title 28, United States Code, mandates that the Commission assure that certain "career" offenders receive a sentence of imprisonment "at or near the maximum term authorized."  Section 4B1.1 implements this directive, with the definition of a career offender tracking in large part the criteria set forth in 28 U.S.C. § 994(h).  However, in accord with its general guideline promulgation authority under 28 U.S.C. § 994(a) - (f), and its amendment authority under 28 U.S.C. § 994(o) and (p), the Commission has modified this definition in several respects to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct . . . ."  28 U.S.C. § 991(b)(1)(B).  The Commission's refinement of this definition over time is consistent with Congress's choice of a directive to the Commission rather than a mandatory minimum sentencing statute ("The [Senate Judiciary] Committee believes that such a directive to the Commission will be more effective; the guidelines development process can assure consistent and rational implementation for the Committee's view that substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers."  S. Rep. No. 225, 98th Cong., 1st Sess. 175 (1983)).

U.S.S.G. § 4B1.1, comment. (backg'd).  We therefore hold that a district court making sentencing determinations may not implicitly reject Congress's policy decision to prescribe harsher penalties for career offenders by ignoring or outright rejecting a defendant's status as a career criminal offender.

Again, however, this does not end the matter.  If we were to view Funk's sentence simply as a sentence where "the district court independently [chose] to deviate from the advisory guidelines range," *Davis*, 458 F.3d at 496, we would still need to determine whether the district court adequately justified the extent of that deviation.  Here we conclude that it did not.  The district court has not provided a sufficient "justification based on factors in section 3553(a)," *id*., to support a reduction of more than 40% from the bottom of the applicable guidelines range.  The error here is not a procedural one; the district court did in fact consider various of the § 3553(a) factors.  The error is substantive; the district court failed to identify the characteristics peculiar to this defendant that justify the variance.  *See United States v. Eura*, 440 F.3d 625, 634 (4th Cir. 2006) ("[A] sentencing court must identify the *individual* aspects of the *defendant's case* that fit within the factors listed in 18 U.S.C. § 3553(a) and, in reliance on those findings, impose a non-Guidelines sentence that is reasonable.").

At the sentencing hearing, the district court tied several of its reasons for imposing only a 150-month sentence to the court's hope that, given the age Funk would be at the expiration of that sentence – "50-some years old," according to the district court – his likelihood of recidivism is low.  We recognize that a defendant's age does not factor into his guidelines calculation and that a defendant's age could therefore represent a legitimate basis for varying from the otherwise applicable range in an unusual circumstance.  *See Davis*, 458 F.3d at 498 (finding that a downward variance from the guidelines range of 30-to-37 months' incarceration to a sentence of one day in prison based in part on the defendant's age of 70 was not justified, although acknowledging that in an appropriate case, age may present a legitimate ground for a variance); U.S.S.G. § 5H1.1 (recognizing that "[a]ge may be a reason to depart downward").  But a criminal history that meets

---

(internal quotations omitted)).

the criteria for the status of a career offender – which, in Funk's case, includes three convictions for violent crimes and one for drug trafficking – in the absence of some factor other than the defendant's age at the time of sentencing, does not appear to auger well for a low likelihood of recidivism, or, contrary to the district court's belief, a high degree of confidence that the substantially decreased sentence provides adequate protection to the public. Nor does sentencing a career offender as if he did not have a career offender's criminal record appear to provide, as the district court suggested, "adequate deterrence to others in [Funk's] situation." Indeed, one might assume that the contrary would be true, and other career criminals would find reason for optimism that, if apprehended, they too will be the objects of district courts' sentencing beneficence.

In short, we conclude that the district court erred in mitigating Funk's sentence on the basis of an impermissible sentencing factor, namely, the court's disagreement with Congress's policy decisions as implemented by the Sentencing Commission in the career offender provisions, and by failing adequately to justify its substantial deviation from the applicable guidelines range. We will not vacate the sentence, however, if the error was harmless. "Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless - i.e. any such error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). Here we cannot find that these errors did not substantially affect the district court's choice of sentence, and we cannot hold that the error is harmless.

### III.

For the foregoing reasons, we **VACATE** Funk's sentence and **REMAND** the case to the district court for re-sentencing.