*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0264p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

JAMES M. FUNK,

*Defendant-Appellee.*

No. 05-3708

>

---

On Remand from the United States Supreme Court.
No. 02-00708—James G. Carr, Chief District Judge.

Argued: June 23, 2006

Decided and Filed: July 22, 2008

Before: BOGGS, Chief Judge; BATCHELDER, Circuit Judge; BELL, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** Joseph R. Wilson, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellant. Spiros P. Cocoves, LAW OFFICE, Toledo, Ohio, for Appellee **ON BRIEF:** Joseph R. Wilson, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellant. Spiros P. Cocoves, LAW OFFICE, Toledo, Ohio, for Appellee.

BATCHELDER, J., delivered the opinion of the court, in which BELL, D. J., joined. BOGGS, C. J. (p. 9), delivered a separate dissenting opinion.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. On remand from the Supreme Court, we are charged with deciding whether a district court's below-Guidelines sentence was reasonable. Because we conclude that it was not, we VACATE and REMAND for resentencing.

**I.**

From 1998 to 2001, James Funk was part of a conspiracy to bring drugs from Florida and Texas to Marion, Ohio. In 2002, the federal government indicted Funk and seven of his cohorts for

---

[*] The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

1

conspiring to possess cocaine and marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment specified that beginning in 1998 the defendants conspired to obtain over 15 kilograms of cocaine and over 2,000 pounds of marijuana and to distribute it in the Marion area. The case went to trial and while most of the trial testimony focused on marijuana trafficking, one witness testified to purchasing cocaine from Funk; specifically, eleven ounces on one occasion, and one ounce on each of three other occasions, all during 1998.

The jury convicted Funk as charged and the court sentenced him to 262 months in prison, which was the low end of the then-mandatory sentencing range, calculated at 262 to 327 months, pursuant to the United States Sentencing Guidelines. On direct appeal, we affirmed Funk's conviction, but vacated his sentence and remanded the case for re-sentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Funk*, 124 F. App'x. 987, 991 (6th Cir. 2005).

On remand, Funk argued to the district court that the career offender enhancement, U.S.S.G. § 4B1.1 — which had previously been included without protest — made the sentence unreasonably high, and Funk urged the court to calculate the advisory Guidelines range without the career offender enhancement. At the sentencing hearing, the court indicated some agreement with this proposition, expressing a disregard for the Guidelines formulation on this issue and announcing that it was "inclined to apply the [G]uideline range as if the career offender enhancement was not there."

In its written judgment entry, however, the court included the career offender enhancement in calculating the advisory Guideline range, which it properly recognized as 262 to 327 months. But the court did not sentence Funk within the calculated range. Instead, the court granted Funk a downward variance, sentencing him to only 150 months and stating its reasons as follows:

> The Court, pursuant to 18 U.S.C. § 3553(a), did not sentence the defendant under the advisory [G]uideline range. The Court found that the career enhancement was excessive and unreasonable. In making that determination, the Court found:
>
> 1. that even though the underlying charge was marijuana, which is an extremely serious offense, the defendant and his cohorts did not participate in cocaine, heroin, ecstasy, methamphetamine[,] or firearms;
>
> 2. a term of 150 months provides a just punishment, one that incapacitates this defendant and deters the defendant in the future[;]
>
> 3. a term of 150 months appropriately fits this defendant and his offense;
>
> 4. [a term of 150 months] provides an adequate public deterrence and safety[.]

On appeal, we vacated the sentence as unreasonable, concluding that the court considered "impermissible factors" and failed to justify adequately its substantial downward variance from the applicable Guidelines range. *United States v. Funk*, 477 F.3d 421, 423 (6th Cir. 2007).

Funk appealed to the United States Supreme Court, which vacated our decision without opinion and remanded the case with instruction to reconsider our prior holding in light of its recent opinions on federal sentencing. *Funk v. United States*, -- U.S. --, 128 S. Ct. 861 (2008). Having now reconsidered the district court's sentencing decision — and Funk's sentence — in light of the recent Supreme Court case law, we conclude that the district court did not justify the variance in this case adequately, and therefore, the sentence is substantively unreasonable.

**II.**

In three companion cases — *Rita*, *Kimbrough*, and *Gall* — the Supreme Court continued to clarify what it meant in *Booker*, 543 U.S. at 262, when it instructed the "appellate courts to determine whether the sentence 'is unreasonable' with regard to § 3553(a)." *See Rita v. United States*, 551 U.S. --, 127 S. Ct. 2456 (2007); *Kimbrough v. United States*, 552 U.S. --, 128 S. Ct. 558 (2007); *Gall v. United States*, 552 U.S. --, 128 S. Ct. 586 (2007). In doing so, the Court has drawn a distinction between those cases that fall within the "heartland" of cases "to which the Commission intends individual [G]uidelines to apply," *Rita*, 127 S. Ct. at 2465 (citing U.S.S.G. § 5K2.0), which the Court has dubbed "mine-run cases" — and those that do not:

> [I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. The sentencing judge, on the other hand, has greater familiarity with the individual case and the individual defendant before him than the Commission or the appeals court. [The sentencing judge] is therefore in a superior position to find facts and judge their import under § 3353(a) in each particular case.
>
> In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract greatest respect [from the reviewing court on appeal] when the sentencing judge finds a particular case outside the 'heartland' to which the Commission intends individual Guidelines to apply.
>
> On the other hand, while the Guidelines are no longer binding, closer review [by the appellate court] may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case.

*Kimbrough*, 128 S. Ct. at 574-75 (certain quotation marks, editorial marks, and citations omitted; paragraph breaks inserted) (quoting *Rita*, 127 S. Ct. at 2465, and *Gall*, 128 S. Ct. at 586).

*Rita*, 127 S. Ct. at 2465, was the epitome of the mine-run case, in which "[a]n individual judge [] imposes a sentence within the range recommended by the Guidelines[,] thus mak[ing] a decision that is fully consistent with the Commission's judgment in general," and entitling that decision to a presumption of reasonableness. *Kimbrough* and *Gall*, on the other hand, were cases "outside the heartland" (*Gall* because it involved an unusually sympathetic and repentant defendant, 128 S. Ct. at 600-02, and *Kimbrough* because it involved unusual Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role," 128 S. Ct. at 575), thus implicating the second stanza of the above block quote and correspondingly entitling the district courts' decisions — both of which departed dramatically from the advisory ranges — to the "greatest respect." The Court has yet to consider a case implicating the third stanza, in which a sentencing judge, in a mine-run case, departed from the advisory range "based solely on the judge's view that the Guidelines range fail[ed] properly to reflect § 3553(a) considerations" — and consequently authored a decision that warrants some type of "closer review." *See Kimbrough*, 128 S. Ct. at 575.

In addition to the foregoing, the Court also reiterated the proper standard of review and further distinguished procedural from substantive error. That is, "courts of appeals must review all sentences — whether inside, just outside, or significantly outside the Guidelines range — under a deferential abuse-of-discretion standard." *Gall*, 128 S. Ct. at 591. Abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, improperly applies the governing law, or uses an erroneous legal standard. *United States v. Lineback*, 330 F.3d 441, 443 (6th Cir. 2003). The Supreme Court further specified that the reviewing court must follow a two-step analysis, to wit:

[1] It must first ensure that the district court committed no significant *procedural error*, such as

- failing to calculate (or improperly calculating) the Guidelines range,

- treating the Guidelines as mandatory,

- failing to consider the § 3553(a) factors,

- selecting a sentence based on clearly erroneous facts, or

- failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range.

[2] [If] the district court's sentencing decision is procedurally sound, the appellate court should then consider the *substantive reasonableness* of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will [] take into account the totality of the circumstances, including

- the extent of any variance from the Guidelines range.

  ▸ If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness.

  ▸ But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness.

- [The reviewing court] may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that [it] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Gall*, 128 S. Ct. at 597 (emphasis added; paragraph breaks, numbering, and bullets inserted; citations omitted). Procedural error, then, is abuse of discretion *per se*, inasmuch as the court applied the law improperly. *See Lineback*, 330 F.3d at 443. But substantive error is far more ambiguous — it is an error so serious that the decision is not entitled to deference, just as if the court had relied on a clearly erroneous finding of fact, clearly misapplied the law, or applied the wrong law. *See id*. Furthermore, the amount of deference that is due in any particular case varies, depending on whether the case is outside the Guidelines' "heartland" and therefore entitled to the "greatest respect," or alternatively, is a "mine-run case" warranting "closer review." *See Kimbrough*, 128 S. Ct. at 575.[1]

In our prior decision in this case, we held "that the district court erred in mitigating Funk's sentence on the basis of an impermissible sentencing factor, namely, the court's disagreement with Congress's policy decisions as implemented by the Sentencing Commission in the career offender provisions [§ 4B1.1], and by failing adequately to justify its substantial deviation from the applicable [G]uidelines range." The district court had calculated an advisory range of 262 to 327 months,

---

[1] We note that, despite Funk's protests, our recent decisions are not to the contrary. *See*, *e.g.*, *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) (discussing the "pattern that emerges from *Rita*, *Gall*, and *Kimbrough*," and concluding that they favored deference); *United States v. Grossman*, 513 F.3d 592, 597-98 (6th Cir. 2008) (emphasizing the "number of individualized considerations" that made that sentence unique).

based in part on a career offender enhancement, U.S.S.G. § 4B1.1(a). But the court ultimately sentenced Funk to only 150 months in prison, based on the reasoning stated in its judgment entry:

> The [district court], pursuant to 18 U.S.C. § 3553(a), did not sentence the defendant under the advisory guideline range. The [c]ourt found that *the career enhancement was excessive and unreasonable*. In making that determination, the [c]ourt found:
>
> 1. that even though the underlying charge was marijuana, which is an extremely serious offense, the defendant and his cohorts did not participate in cocaine, heroin, ecstasy, methamphetamine or firearms;
>
> 2. a term of 150 months provides a just punishment, one that incapacitates this defendant and deters the defendant in the future[;]
>
> 3. a term of 150 months appropriately fits this defendant and his offense;
>
> 4. [a term of 150 months] provides an adequate public deterrence and safety[.]

*See Funk*, 477 F.3d at 425 (emphasis added). Based on the district court's reasoning, then, this appears to be the type of "mine-run case" implicated by *Kimbrough*'s third stanza — one in which "the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations." *See Kimbrough*, 128 S. Ct. at 575.

In our prior opinion, we found the sentencing (and the sentence) procedurally reasonable, *Funk*, 477 F.3d at 430 ("The error here is not a procedural one; the district court did in fact consider various of the § 3553(a) factors."), but found the sentence substantively unreasonable, on two bases. First, the district court refused to sentence Funk in accordance with § 4B1.1, the career-offender guideline. *Id*. at 427 ("In essence, then, the court disregarded the 'type' of criminal Funk is and sentenced him as if he were not a career offender, and particularly, as if he did not have 'at least two prior felony convictions of either a crime of violence or a controlled substance offense.'"); *see also id*. at 428 ("We think it is clear that in sentencing Funk as if he were not a career offender, the district court erred."). Also, we held that the court failed our then-prevailing proportionality test. *Id*. at 430 ("The district court has not provided a sufficient justification based on factors in [§] 3553(a) to support a reduction of more than 40% from the bottom of the applicable [G]uidelines range." (citation omitted)); *see also United States v. Klups*, 514 F.3d 532, 539-39 (6th Cir. 2008) (citing *Funk*, 477 F.3d at 426, for the Sixth Circuit's pre-*Gall* proportionality rule).

Neither of these holdings survives *Gall*, and consequently, the Supreme Court vacated the decision and sent it back for reconsideration. *Funk v. United States*, -- U.S. --, 128 S. Ct. 861 (2008). The latter of our two holdings is most directly rejected by *Gall*, inasmuch as *Gall*, 128 S. Ct. at 594, states expressly: "the Court of Appeals' rule requiring 'proportional' justifications for departures from the Guidelines range is not consistent with our remedial opinion in *United States v. Booker*[.]" Although not as expressly as the latter, the former holding is also refuted, particularly in light of Justice Alito's dissent, *id*. at 603-10, which is a more elaborate argument on the same theme and, being a dissent, was implicitly rejected by the *Gall* majority.

Thus, we are left to reconsider Funk's sentencing in light of *Gall*, and as explained in the foregoing, that necessitates consideration, and ultimately determination, of a series of questions:

> 1. Is this an atypical case, outside the Guidelines' "heartland" of cases, that entitles the district court's decision the "greatest respect"; or, is it — as the evidence suggests — a "mine-run case," warranting some "closer review"?

2.      If this is a "mine-run case," what exactly is this "closer review"?

3.      Taking into account the appropriate standard of deference — greatest respect or closer review — did the district court abuse its discretion by imposing a sentence of only 150 months when the advisory Guidelines range was 262 to 327?

These are questions of law for this court to decide, and we have determined that there is no need to remand this case to the district court for further development of the record.

This appears to be a mine-run case and not the unusual case outside the heartland. Certainly, Funk is not the unusually sympathetic and repentant figure depicted in *Gall*, 128 S. Ct. at 600-02, and the district court recognized as much. *Funk*, 477 F.3d at 424-25. And, unlike the 100-to-1 crack-to-cocaine ratio in *Kimbrough*, 128 S. Ct. at 575, the career offender guideline in this case (§ 4B1.1) is exactly the type of guideline issue that "exemplif[ies] the Commission's exercise of its characteristic institutional role." In fact, this provision is the direct result of Congress's directive:

Section 994(h) of Title 28 [] mandates that the Commission assure that certain 'career' offenders receive a sentence of imprisonment 'at or near the maximum term authorized.' Section 4B1.1 implements this directive, with the definition of a career offender tracking in large part the criteria set forth in 28 U.S.C. § 994(h).

U.S.S.G. § 4B1.1 Commentary (Background). This alone is likely sufficient to distinguish the outcome of this case from that in *Kimbrough*. Furthermore, nothing in the district court's explanation of its reasoning, as documented in its sentencing order, indicates that this case is atypical.

In *Rita*, the Court acknowledged that, in every case, "both the sentencing judge and the Sentencing Commission will have reached [a] conclusion as to the proper sentence in [that] particular case." *Rita*, 127 S. Ct. at 2463 ("The upshot is that the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one at retail, the other at wholesale.").[2] Thus, we find that "closer review," from this perspective, means that when the sentencing judge disagrees with the Commission's determinations in these "mine run cases" — which, by definition, fall squarely within the Commission's province of expertise, i.e., within "the 'heartland' to which the Commission intends individual Guidelines to apply," *id.* at 2463 (citing U.S.S.G. § 5K2.0) — a reviewing court can look with a little more skepticism at a sentencing judge's individualistic determination and with a little more favor towards the Commission's advisory-Guidelines. Otherwise stated, the sentencing judge's decision — being contrary to the Commission's established Guidelines in a case perfectly suited to the Commission's

---

[2] The Supreme Court was exceptionally clear on this point in *Kimbrough*, when it emphasized the Commission's role, again citing to *Rita* and *Gall*, while explaining:

While rendering the Sentencing Guidelines advisory, we have nevertheless preserved a key role for the Sentencing Commission. As explained in *Rita* and *Gall*, district courts must treat the Guidelines as the 'starting point and the initial benchmark.' Congress established the Commission to formulate and constantly refine national sentencing standards. Carrying out its charge, the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'

We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.' The sentencing judge, on the other hand, has 'greater familiarity with . . . the individual case and the individual defendant before him than the Commission or the appeals court.' He is therefore 'in a superior position to find facts and judge their import under § 3353(a)' in each particular case.

*Kimbrough*, 128 S. Ct. at 574 (citations omitted) (citing *Booker*, *Rita*, and *Gall*).

determination, and hence, the Guidelines — does not receive as much deference as it would in an unusual case, when the Guidelines calculations do not fit the circumstances quite so neatly.

After specifically saying that it found the career enhancement "excessive and unreasonable," the district court stated four reasons for its refusal to sentence Funk within the properly calculated Guidelines range: (1) Funk "did not participate in cocaine, heroin, ecstasy, methamphetamine or firearms"; (2) "150 months provides a just punishment, one that incapacitates this defendant and deters the defendant in the future"; (3) "150 months appropriately fits this defendant and his offense"; (4) "[150 months] provides an adequate public deterrence and safety." *Funk*, 477 F.3d at 425. It is evident from the foregoing that the court did not make any clearly erroneous findings of fact. *See Lineback*, 330 F.3d at 443.

The question, then, is whether the district court clearly misapplied the law, namely § 3553(a), and this being a "closer review," we may be more skeptical than we otherwise might in considering the reasonableness of the district court's findings under § 3553(a). The district court's first proffered reason is true, but it is indisputable that this factor is completely and effectively encompassed in the Guidelines calculations and offers no support for a departure from those calculations. By stating that "the career offender enhancement [is] excessive and unreasonable," the sentencing judge appears to have concluded that — because a controlled substance offense involving marijuana is not as serious as one involving "cocaine, heroin, ecstacy, methamphetamine, or firearms" — Guideline § 4B1.1 (the career offender enhancement)[3] should not include marijuana convictions. Either the sentencing judge categorically excluded Funk's marijuana conviction, without any explanation of why Funk's marijuana conviction merited exclusion while other marijuana convictions do not; or the court presumed that the Sentencing Commission included marijuana convictions erroneously when it implemented the directive of 28 U.S.C. § 994(h), despite marijuana's inclusion as a controlled substance in 21 U.S.C. § 841. Regardless, by concluding that a conviction involving marijuana is not serious enough to warrant inclusion in the career offender calculus of § 4B1.1 and § 4B1.2(b), it is clear that the sentencing judge sought to impose his own policy determination, vis-a-vis marijuana convictions, and to supplant that of the Sentencing Commission (and Congress). We find this to be insupportable and incorrect. Consequently, this is an improper judicial explanation for a departure, as it has nothing to do with § 3553(a) factors.

Whether the other three proffered reasons, which are all subjective judgments, are reasonable depends on the level of deference we are to afford the sentencing court — at a high level of deference, these judgments will likely be found reasonable, but at a low level of deference (such as here), they likely will not. Just to be clear, these three purported reasons are certainly "based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations." *See Kimbrough*, 128 S. Ct. at 575. Thus, "tak[ing] into account the totality of the circumstances," as *Gall*, 128 S. Ct. at 597, instructs, "including the extent of any variance from the Guidelines range,"

---

[3] Guideline § 4B1.1(a) provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The definitions for § 4B1.1 are provided by § 4B1.2(b), which defines "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Here, Funk's "instant offense of conviction" is for conspiracy to possess marijuana with intent to distribute it, in violation of 21 U.S.C. §§ 841(a) and 846, and is indisputably a controlled substance offense.

which in this case is extensive,[4] we conclude that the sentencing court abused its discretion by departing as it did from the Guidelines range in this particular case. The sentencing court did not justify this variance with any fact or circumstance unique to this defendant (such as in *Gall*) or to this crime (such as in *Kimbrough*) that was not fully addressed by the Commission in the Guidelines. Rather, the sentencing court clearly indicated that it would not sentence Funk as a career offender, despite the clear direction by Congress, *see* 28 U.S.C. § 994(h), that offenders such as Funk be sentenced as such. The resulting sentence is therefore substantively unreasonable.

### III.

For the foregoing reasons, we **VACATE** the sentence and **REMAND** this case to the district court for **RESENTENCING** in accordance with this opinion.

---

[4] The sentence of 150 months is 112 months below the bottom of the calculated advisory range and 144 months below the middle of the range, meaning that it is about half of the sentence anticipated by the Guidelines. But, note that we relegate this point to a footnote to emphasize that our intent is to show, in a general way, that the district court's variance in this case was extensive, not to suggest any sort of proportionality review, as is disallowed by *Gall*.

---

**DISSENT**

---

BOGGS, Chief Judge, dissenting. This case represents essentially a judgment call under the rather unclear standard of "reasonableness" that we have been given by the Supreme Court in the wake of *Rita*, *Kimbrough*, and *Gall*. Although I recognize that it is a close question, I am persuaded by the emphasis on the discretion of district courts in the recent Supreme Court cases that the sentence here should be affirmed. *See United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) (affirming sentence and noting that "the central lesson [of] these decisions [is] that district courts . . . deserve the benefit of the doubt when we review their sentences and the reasons given for them."). I therefore respectfully dissent.

I do not read the district court's statement here as saying that the "career offender" guidelines should never be applied to result in a sentence that is in fact within those guidelines. Although the district judge was somewhat cursory in stating, as our court summarizes at page 5, that the chosen sentence of 150 months of imprisonment would "provide[] a just punishment . . . . appropriately fit[] this defendant and his offense . . . [and] provide[] an adequate public deterrence," I believe enough was said to indicate that the court exercised, and did not abuse, its discretion.

In logic, I find it difficult to express a way in which a judge can adequately say that a sentence is "too much" or "too little" in any form of words. As I read the trial transcript, the district judge obviously knew the characteristics of the defendant before him, considered the advice of the guidelines, and decided to reject it, invoking the language of § 3553(a) as to the factors that he considered.

While a more extensive, fact-laden, or lyrical exegesis might have been possible or preferable, what I take from the record is that the judge did consider thoughtfully the facts of this case and did enough that he did not abuse his discretion.