United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 17, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 06-20193
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

NORMA GONZALEZ SANCHEZ, also known as Norma Gonzalez
Campos,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before KING, GARZA, and PRADO, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Norma Gonzalez Sanchez ("Sanchez") pleaded guilty to one count of conspiracy to transport undocumented aliens within the United States, in violation of 8 U.S.C. § 1324. The government appeals, arguing that Sanchez's sentence, which is forty-two percent lower than the Guideline minimum, is unreasonable. Because we conclude that the sentence unreasonably fails to reflect the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), we vacate the sentence and remand for resentencing.

I

On May 14, 2003, state and federal authorities discovered an abandoned refrigeration trailer near a truck stop in Victoria, Texas. Inside and around the opened trailer were the bodies of seventeen deceased individuals. Two others found near the trailer later died at an area hospital. The ensuing criminal investigation uncovered a large-scale alien smuggling network operating out of the Rio Grande Valley. Comprising the network were various smuggling organizations, each with its own network of participants who were responsible for transporting aliens to the Mexico/United States border, facilitating their illegal entry into the United States, harboring them temporarily in drop-houses throughout the Rio Grande Valley, and arranging transportation for them to various locations north of the Border Patrol checkpoints and into the interior of the United States. Investigators discovered that Karla Patricia Chavez-Joya ("Chavez"), who headed one of the smuggling organizations, would coordinate the pooling of the other smuggling organizations and arrange for the bulk transport of aliens inside tractor-trailer rigs. Investigators further determined that on May 13, 2003, at least seventy-three undocumented aliens had been secreted in the trailer found in Victoria, which had been part of a tractor-trailer rig driven by a member of the alien smuggling conspiracy from Harlingen, Texas to Victoria.[1] Autopsies of the nineteen aliens who died revealed that they had all succumbed to hyperthermia, suffocation, and dehydration due to the deplorable conditions inside the trailer.

Sanchez was identified as a participant in the trafficking operation. Investigators learned that Sanchez owned and operated a restaurant in Houston, Texas, where she would meet with individuals

_____

[1] The Presentence Investigation Report ("PSR") indicates that when the driver opened the trailer doors in Victoria and saw that some of the aliens had passed out and/or died, he sped away in the cab, abandoning the trailer.

to discuss arrangements and collect fees for smuggling their relatives into the United States. She would forward some portion of the fees to her contacts in the Rio Grande Valley smuggling operation, with whom she would then work to coordinate the transportation of her clients' relatives. Investigators further discovered that it was Sanchez who had arranged for the smuggling of two of the undocumented aliens transported in the abandoned trailer: Faviola Angelica Gonzalez-Buendia ("Gonzalez") and Elisendo Cabañas ("Cabañas"). Cabañas was one of the nineteen aliens who died.

In March 2004, Sanchez and thirteen others were charged in a sixty-count superseding indictment with various alien smuggling offenses. Sanchez subsequently reached a plea agreement with the government, in which she agreed to plead guilty to the conspiracy charged in count one of the superseding indictment in exchange for the government dismissing the remaining counts against her. The plea agreement included a detailed Stipulated Factual Basis (the "Factual Basis"), which stated that Sanchez, "working in conjunction, and at times at the direction of co-conspirators, was responsible for a number of activities to promote, facilitate, and support the smuggling of undocumented aliens from South Texas, to and through the Houston, Texas area."

With respect to Sanchez's involvement in the deadly May 14, 2003 smuggling trip, the Factual Basis stated that Sanchez made the smuggling arrangements for Cabañas at the request of his sister and for Gonzalez at the request of her grandmother, who had been referred to Sanchez as an alien smuggler. The Factual Basis stated that Sanchez charged a $1,900 smuggling fee for each alien and that Sanchez made Gonzalez's and Cabañas's smuggling arrangements through a contact in south Texas whom Sanchez knew as Jose Arturo Rodriguez ("Rodriguez"). According to the Factual Basis, Sanchez knew that Rodriguez worked with other smugglers in south Texas and would at times combine his shipment of aliens with other smugglers' shipments of aliens to facilitate their

transportation. Moreover, Sanchez knew that Gonzalez and Cabañas would be grouped together with other groups of aliens and placed in a large vehicle for their transportation further northward into the interior of the United States. After the refrigeration trailer was abandoned in Victoria, the Factual Basis stated that Sanchez was notified that Gonzalez and Cabañas had been occupants in the trailer. Sanchez contacted Gonzalez's grandmother to inform her of the failed smuggling efforts and returned a $950 down payment that Gonzalez's grandmother had made. Sanchez also contacted Cabañas's sister and ultimately arranged to drive her to Victoria to find out what happened to her brother. The Factual Basis stated that a few days later, Cabañas's sister and an undercover agent posing as another of Cabañas's relatives met with Sanchez. During their tape-recorded conversation, Sanchez made several incriminating statements, including agreeing to return a $700 down payment to Cabañas's sister and to assist with Cabañas's burial expenses. In a subsequent interview with agents from the Bureau of Immigration and Customs Enforcement ("ICE"), Sanchez admitted that she knew Chavez was the smuggler who pooled the aliens for the load discovered in Victoria.

At Sanchez's rearraignment, she admitted under oath that she had committed the conspiracy offense charged in count one of the superseding indictment. When asked by the district court what facts the government would be prepared to prove at trial, the government read essentially verbatim from the Factual Basis in the plea agreement. The government also noted that the Factual Basis was incorporated in the plea agreement Sanchez was about to sign. After hearing the entire factual proffer, Sanchez admitted her guilt:

> I am guilty, because if it hadn't been because of my actions of having sent that person with that person, perhaps what happened would not have happened.

After disputing one of the facts contained in the Factual Basis,[2] Sanchez signed the plea agreement under oath.

Applying the 2004 United States Sentencing Guidelines, the PSR calculated Sanchez's adjusted offense level to be 28, based on a base offense level of 12 under § 2L1.1(a)(2); a 6-level enhancement under § 2L1.1(b)(2)(B) because the offense involved the smuggling, harboring, and transporting of 25-99 aliens; a 2-level enhancement under § 2L1.1(b)(5) because the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person; and an 8-level enhancement under § 2L1.1(b)(6)(4) because at least one of the aliens died. The PSR also recommended that Sanchez receive a 3-level acceptance of responsibility reduction, bringing her total offense level to 25. Because Sanchez had no prior convictions, her criminal history category was I, resulting in an applicable guideline range of 57-71 months.

Sanchez filed five written objections to the PSR, arguing (1) that she should not receive the § 2L1.1(b)(2)(B) enhancement because she could not have foreseen the transportation of seventy-three aliens; (2) that she should not receive the § 2L1.1(b)(5) enhancement because she did not create and could not have foreseen the substantial risk of death or serious injury posed by the mode of transportation; (3) that she should not receive the § 2L1.1(b)(6)(4) enhancement because the manner and means of the transportation were not reasonably foreseeable to her; (4) that under *United States v. Booker*, 543 U.S. 220 (2005), the facts supporting the adjustments should be proved to a jury beyond a reasonable doubt, not found by the court; and (5) that the § 2L1.1(b)(5) and

---

[2] The Factual Basis included a statement that telephone records indicated that Sanchez had received a call from Chavez, shortly after the trailer was abandoned in Victoria. At the hearing, Sanchez claimed that she had never met with or spoken to Chavez personally. When the district court explained that whether Sanchez ever personally met or spoken with Chavez had no bearing on Sanchez's guilty plea, Sanchez said she understood and proceeded with the rearraignment.

-5-

§ 2L1.1(b)(6)(4) enhancements constituted impermissible double counting. At the sentencing hearing, Sanchez stated that her objections essentially challenged the foreseeability of the manner and means of the transportation employed by the smugglers.

The district court agreed that foreseeability was at issue but noted that the Factual Basis for the plea agreement made clear that Sanchez "knew that [Gonzalez and Cabañas] were grouped with other groups of aliens and that they were going to be placed in a large vehicle to facilitate the illegal transportation into the United States." The court recognized that Sanchez might not have known the exact number of aliens that were being grouped together but stated that Sanchez "tossed her hand into the ring with everybody else, not knowing exactly what the scenario was going to be like, and [73 is] how many it turned out to be." The court further found that "there's at least a preponderance of the evidence . . . that she acted recklessly in creating a risk of harm to" Gonzalez and Cabañas because she knew they were going to be grouped with others and loaded into a large vehicle for transportation.

In addressing Sanchez's objection to the 8-level § 2L1.1(b)(6)(4) enhancement, the court stated: "[T]he jury in the last case found that the death of these people was not reasonably foreseeable to these folks [and] in fact acquitted them of the substantive counts dealing with the death based on a multiple conspiracy theory that really was more than one conspiracy that was involved in this case."[3] The court acknowledged that "the Guidelines don't talk about the . . . situation in that way because, specifically, the sentencing guidelines say if somebody died during the transportation or harboring, then this is the specific increase that is appropriate and required." Accordingly, the court denied the

---

[3] The judge was apparently referring to a jury trial of several of Sanchez's co-defendants over which the judge had previously presided.

objection to the § 2L1.1(b)(6)(4) enhancement. Nevertheless, the court asserted its belief that "the

issue of foreseeability is one that clearly the jury had an opportunity to consider and determine that

these people didn't know about the part of the conspiracy that resulted in the deaths of these people,"

and that this "jury finding" was something that the court could factor into determining the appropriate

sentence for Sanchez. The court overruled Sanchez's remaining objections and adopted "those

portions of the [PSR] that relate[] to this defendant's relevant conduct," including the applicable

sentencing range of 57-71 months.

After hearing the parties' arguments, however, the court sentenced Sanchez to 30 months of

imprisonment. The court explained the sentence as follows:

> The defendant stands before this Court for sentencing on her first felony conviction, and her only significant contact with the criminal justice system[;] prior brushes with the law[] did not result in any criminal convictions, although the Court would note that she was previously arrested on a dismissed charge for alien smuggling back in 1998. The defendant was apparently known as someone who would assist people with smuggling. In this case 73 aliens were smuggled on May 14, 2003, of which she had made arrangements for two to be transported in this group.

> The Court finds that the physical conditions in the trailer created a substantial risk of serious bodily injury, and the defendant was assessed an offense characteristic[] related to that, as well as an offense characteristic related to the deaths of the 19 other illegal aliens. However, in this case, the Court finds that the defendant should be punished and held responsible for foreseeable acts[,] . . . taking into consideration the nature and circumstances of this offense and the history and characteristics of this defendant and her actions. In particular, the Court finds that all of the acts that occurred here, particularly the deaths of the 19 persons involved, were not reasonably foreseeable to this defendant based on the nature of the conspiracy and the nature of the multiple conspiracies that were involved in this same case.

> . . . [T]he Court doesn't have any reason to doubt her statement that she was unaware of the fact that the [aliens] would be transported under such conditions as they were. She ha[d] some understanding that the conditions would be less than ideal. And, accordingly, the Court believes that the assessment for creating)) recklessly creating a risk of injury or death was appropriate in this case; however, as the government pointed out, the defendant should be held responsible for the actions that

she caused, but they must be the actions that she caused that were reasonably foreseeable to her. And all of the acts that occurred here, the Court does not find were reasonably foreseeable to this particular defendant, even in light of her actions in this case.

The court then recited the 18 U.S.C. § 3553(a) sentencing factors and stated that it had considered those factors in reaching the 30-month sentence but offered no explanation as to how factors like the seriousness of the offense and the need to protect the public from further crimes of Sanchez factored into its decision to vary downward from the applicable Guideline range.[4]

The government objected to the sentence, arguing that the court was "abusing its discretion" by "imposing a sentence that is unreasonable under the guidelines." The government disagreed with the court's analysis of what was reasonably foreseeable to Sanchez and specifically disputed the court's "finding that there has been a jury finding that there were multiple conspiracies present in this case." The court protested, stating "I didn't say that there was a jury finding. I said that there was a finding there was multiple conspiracies in this case." The government responded that there was insufficient evidence before the court to support such a finding and maintained its objection.

Sanchez then informed the court that she had already served 33 months. Over the government's objection, the court stated that Sanchez should be released immediately. When the United States Marshal informed the court that Sanchez could only be released immediately if the court sentenced her to "time served," the court announced: "Al[]right. She's sentenced to time served." Thus, Sanchez effectively received a 33-month sentence.

The district court subsequently signed a "Statement of Reasons," in which she justified the

---

[4] Although the district court did not expressly state why it settled on a 30-month sentence, that sentence corresponds to the top of the Guideline range in which Sanchez would have fallen had she not received the eight-level § 2L1.1(b)(6)(4) enhancement.

sentence as follows:

> The Court finds that multiple conspiracies were involved in this offense and that while the specific offense characteristics are required by the guidelines, because of the facts of this case, the end consequences were not reasonably foreseeable to the defendant based on the specific conspiracy in which the defendant was involved. A sentence of time served is sufficient but not greater that necessary.

The government timely appealed.

II

After *Booker*, we continue to review the district court's interpretation and application of the Guidelines de novo. *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006) (citing *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005)). "We accept the district court's findings of fact unless clearly erroneous." *United States v. Duhon*, 440 F.3d 711, 714 (5th Cir. 2006) (citing *United States v. Creech*, 408 F.3d 264, 270 n.2 (5th Cir. 2005)). Ultimately, we review the sentence for "unreasonableness" in light of the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). *Id.*[5]

---

[5] The relevant factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed))
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for))
    (A) the applicable category of offense committed by the applicable category of defendant    as set forth in the guidelines . . .;
(5) any pertinent policy statement . . .;
(6) the need to avoid unwarranted sentence disparities among defendants with similar

It is undisputed that Sanchez's sentence is a "non-Guideline sentence." *See Smith*, 440 F.3d at 706-07. Before imposing a non-Guideline sentence, the district court must consider the Guidelines, utilizing the properly calculated Guideline range as a "frame of reference." *Id.* at 707 (citations omitted). Moreover, the district court must "more thoroughly articulate its reasons when it imposes a non-Guideline sentence than when it imposes" a Guideline sentence. *Id.* "These reasons should be fact-specific and consistent with the sentencing factors enumerated in section 3553(a)." *Id.* The more a sentence varies from the applicable Guidelines range, "the more compelling the justification based on factors in section 3553(a) must be." *Duhon*, 440 F.3d at 715 (quoting *Smith*, 440 F.3d at 707). Although the district court need not mechanically discuss each § 3553(a) factor, the court's statement of reasons must enable this court "to determine whether, as a matter of substance, the sentencing factors in section 3553(a) support the sentence." *Smith*, 440 F.3d at 707.

"In reviewing for reasonableness, we assess whether the statutory sentencing factors support the sentence[,]" recognizing that the "*totality* of the relevant statutory factors" must support the sentence. *Duhon*, 440 F.3d at 715 (citation omitted). "A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Smith*, 440 F.3d at 708 (citing *United States v. Haack*, 403 F.3d 997 (8th Cir. 2005)). The government argues that Sanchez's sentence encompasses each of these errors and, consequently, is unreasonable.

---

records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a) (2000).

-10-

In deviating from the properly calculated Guideline range of 57-71 months[6] and sentencing Sanchez to 33 months, the district court reasoned that multiple conspiracies were involved in the offense and that the "end consequences"))namely, the deaths of nineteen of the smuggled aliens))were not reasonably foreseeable to Sanchez based on the specific conspiracy in which she was involved. This reasoning reflects at least two clearly erroneous factual determinations. First, the record does not support the district court's finding that the offense in this case involved "multiple conspiracies," rather than the single conspiracy charged in count one of the superseding indictment. To the contrary, the district court's multiple conspiracy finding is belied by the events recounted in the PSR, which point to a single conspiracy, headed by Chavez, to profit from the bulk smuggling of aliens into and within the United States. *See generally United States v. Morris*, 46 F.3d 410, 415-17 (5th Cir. 1995) (identifying "(1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings," as the relevant considerations when determining whether the evidence establishes a single conspiracy or multiple conspiracies and analyzing each of those requirements). But even if the multiple conspiracy finding had some basis in the record, the court's finding that Sanchez's role was limited to participating in a lesser conspiracy is wholly at odds with Sanchez's plea of guilty to count one of the superseding indictment. Count one charged Sanchez with being a participant in a single, overarching alien smuggling conspiracy. When she pleaded guilty to that count, Sanchez admitted under oath that she was guilty of participating in that conspiracy, not in some part of that conspiracy or in some other, lesser conspiracy. The district

---

[6] On appeal, Sanchez does not argue that the district court improperly calculated the Guideline range. Accordingly, she has waived any claim that the district court should not have applied the § 2L1.1(b)(2)(B), (b)(5), and (b)(6)(4) enhancements, and we need not decide whether those enhancements were proper. *United States v. Dock*, 426 F.3d 269, 273 n.2 (5th Cir. 2005).

court's finding to the contrary was clearly erroneous.

The erroneous multiple conspiracy finding was followed by a second erroneous finding) ) that because Sanchez was only involved in a lesser conspiracy, the "end consequences" of the overarching conspiracy, *i.e.*, the deaths of some of the aliens, were not reasonably foreseeable to her. As the district court acknowledged several times during the sentencing hearing, Sanchez knew when she made the smuggling arrangements for Gonzalez and Cabañas that they were going to be grouped together with other groups of aliens and placed into a large vehicle to facilitate their illegal transportation within the United States. Moreover, in an interview with the probation officer preparing the PSR, Sanchez claimed that she knew aliens who had been transported in the past "in the cab, with the driver," which indicates that Sanchez knew that the smugglers had used tractor-trailers or other similar vehicles with separate passenger and cargo areas before. Thus, it was reasonably foreseeable that the "large vehicle" used to smuggle Gonzalez and Cabañas would be a tractor-trailer type vehicle. Further, it was reasonably foreseeable that in using a tractor-trailer, the smugglers might, in order to facilitate their illegal transportation, hide some or most of the several groups of aliens with whom Gonzalez and Cabañas were to be transported in the enclosed trailer, where they would be unable to communicate with the driver, might not have access to sufficient oxygen or protection from extreme temperatures, and could not easily extricate themselves from the vehicle if dangerous conditions arose. Nevertheless, Sanchez recklessly entrusted Gonzalez and Cabañas to the smugglers and failed to take any steps to ensure that they were not exposed to dangerous conditions during the smuggling. Given these facts, it was clearly erroneous for the district court to find that Sanchez could not have foreseen the dangerous method in which Gonzalez and Cabañas were transported and Cabañas's resulting death. The court's "clearly erroneous factual determinations infected [its] balancing of the § 3553(a) factors

and provide an insufficient basis for imposing a non-Guideline sentence." *United States v. Guidry*, 462 F.3d 373, 377 (5th Cir. 2006).

To the extent the district court based Sanchez's sentence on a finding that she could not reasonably have foreseen *nineteen* deaths, this was an improper reason for imposing a non-Guideline sentence because the applicable Guideline range specifically accounted for only one of those deaths. Under U.S.S.G. § 2L1.1(b)(6)(4), a defendant's offense level is increased by eight levels "[i]f any person died." U.S.S.G. § 2L1.1(b)(6)(4); *United States v. Garcia-Guerrero*, 313 F.3d 892, 898 (5th Cir. 2002). Thus, in receiving the § 2L1.1(b)(6)(4) enhancement, Sanchez was not being held accountable for nineteen deaths; she was only being held accountable for one. *See* U.S.S.G. § 2L1.1(b)(6)(4); *see also United States v. Jose-Gonzalez*, 291 F.3d 697, 703 (10th Cir. 2002) (explaining that § 2L1.1(b)(6) does not take into account multiple deaths or injuries; recognizing that multiple deaths or injuries would be a permissible ground for an upward departure). A finding that Sanchez could not have foreseen the deaths of eighteen additional aliens does not, therefore, justify a downward variance from the applicable Guideline range. *See United States v. Perrin*, 478 F.3d 672 (5th Cir. 2007) ("The fact that a defendant did not commit, or have the tendency to commit, a more severe crime does not warrant a downward departure for the crime actually committed.").

The district court also erred by failing to give sufficient weight to the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In justifying the non-Guideline sentence, the district court essentially found that Sanchez stood before the court as a first time offender. Such a finding is not consistent with the reality of Sanchez's criminal background. Though it is true that Sanchez had no prior convictions, the facts admitted by her, both in the Factual Basis of the plea agreement and to the probation officer preparing the PSR, clearly establish that Gonzalez and Cabañas

were not the first aliens that Sanchez had smuggled into the United States. Despite recognizing that Sanchez was "known as someone who would assist people with smuggling" and had prior "brushes with the law," including an arrest in 1998 for alien smuggling, the district court construed Sanchez's lack of a criminal record in her favor at sentencing. In doing so, the district court failed to give Sanchez's actual criminal history the weight it deserved.

Finally, we note that the district court failed to consider whether the sentence it imposed, which constituted a forty-two percent reduction from the Guideline minimum, would create significant disparity between Sanchez and other defendants with similar criminal histories convicted of similar criminal offenses. *See Guidry*, 462 F.3d at 378. This failure is another reason why this sentence is unreasonable. *Id.*

### III

In imposing the non-Guideline sentence in this case, the district court relied on clearly erroneous factual determinations, put significant weight on an improper factor, and ignored factors that should have been given significant weight. For those reasons, we hold that the sentence is unreasonable. Accordingly, we VACATE the sentence and REMAND the case for resentencing.