IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 8, 2008

Charles R. Fulbruge III
Clerk

No. 06-20193

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

NORMA GONZALEZ SANCHEZ, also known as Norma Gonzalez Campos,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:03-CR-221-9

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before KING, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

This case returns to us on remand from the Supreme Court for further consideration in light of the Court's decision in Gall v. United States, 128 S. Ct. 586 (2007).

Before the district court, Norma Gonzalez Sanchez ("Sanchez") pleaded guilty to one count of conspiracy to transport undocumented aliens within the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

United States, in violation of 8 U.S.C. § 1324. We assume familiarity with our prior decision in this case, United States v. Sanchez, 484 F.3d 803 (5th Cir. 2007), which fully articulates the relevant background to Sanchez's offense. However, for ease of understanding, we include the following selection from our prior decision:

On May 14, 2003, state and federal authorities discovered an abandoned refrigeration trailer near a truck stop in Victoria, Texas. Inside and around the opened trailer were the bodies of seventeen deceased individuals. Two others found near the trailer later died at an area hospital. The ensuing criminal investigation uncovered a large-scale alien smuggling network operating out of the Rio Grande Valley. Comprising the network were various smuggling organizations, each with its own network of participants who were responsible for transporting aliens to the Mexico/United States border, facilitating their illegal entry into the United States, harboring them temporarily in drop-houses throughout the Rio Grande Valley, and arranging transportation for them to various locations north of the Border Patrol checkpoints and into the interior of the United States. Investigators discovered that Karla Patricia Chavez-Joya ("Chavez"), who headed one of the smuggling organizations, would coordinate the pooling of the other smuggling organizations and arrange for the bulk transport of aliens inside tractor-trailer rigs. Investigators further determined that on May 13, 2003, at least seventy-three undocumented aliens had been secreted in the trailer found in Victoria, which had been part of a tractor-trailer rig driven by a member of the alien smuggling conspiracy from Harlingen, Texas to Victoria. Autopsies of the nineteen aliens who died revealed that they had all succumbed to hyperthermia, suffocation, and dehydration due to the deplorable conditions inside the trailer.

Sanchez was identified as a participant in the trafficking operation. Investigators learned that Sanchez owned and operated a restaurant in Houston, Texas, where she would meet with individuals to discuss arrangements and collect fees for smuggling their relatives into the United States. She would forward some portion of the fees to her contacts in the Rio Grande Valley smuggling operation, with whom she would then work to coordinate the transportation of her clients' relatives. Investigators further

discovered that it was Sanchez who had arranged for the smuggling of two of the undocumented aliens transported in the abandoned trailer: Faviola Angelica Gonzalez-Buendia ("Gonzalez") and Elisendo Cabañas ("Cabañas"). Cabañas was one of the nineteen aliens who died.

Sanchez, 484 F.3d at 806–07 (footnote omitted).

The district court calculated Sanchez's applicable sentencing range at 57 to 71 months. Id. at 809. After hearing the parties' arguments, the district court sentenced Sanchez to 30-months imprisonment, which the court altered to "time served" after learning that Sanchez had already served 33 months. Id. at 809–10. The government appealed. We entered a judgment vacating the sentence and remanding for resentencing because the district court's sentence unreasonably failed to reflect the statutory sentencing factors set forth in 18 U.S.C. § 3553(a). Id. at 806.

In our prior decision, we identified five defects in the district court's sentence. To begin, we noted that the district court's reasoning reflected "at least two clearly erroneous factual determinations." Id. at 811. First, we concluded that the record did not support the district court's finding that the offense in this case involved "multiple conspiracies," rather than the single conspiracy charged in the indictment. Id. at 811–12. Second, because the record did not support the multiple conspiracy finding, we further concluded that the district court clearly erred in relying on Sanchez's purported participation in a lesser conspiracy to find that certain consequences of the overarching conspiracy—the death of some aliens as a result of the dangerous methods used to smuggle them into the country—were not reasonably foreseeable to her. Id. at 812. We held that these clearly erroneous factual determinations infected the district court's balancing of the § 3553(a) factors, thus providing an insufficient basis for imposing a non-Guidelines sentence. Id.

As a third defect, we noted the possibility that the district court misinterpreted an applicable sentencing enhancement, U.S.S.G. § 2L1.1(b)(6), (4) (2004). The 2004 version of that enhancement provided for an 8-level increase in the offense level for alien smuggling "[i]f any person died." § 2L1.1(b), (6). We stated that under this enhancement "Sanchez was not being held accountable for nineteen deaths; she was being held accountable for only one." Sanchez, 484 F.3d at 813. Thus, to the extent that the district court deviated from the Guidelines range—and this enhancement—on the basis that Sanchez could not have foreseen the deaths of eighteen additional aliens, this was not a sufficient justification for deviating from the Guidelines range, which specifically accounted for only one of those deaths. Id. at 812–13.

Fourth, we stated that the district court erred by failing to give sufficient weight to the "history and characteristics of the defendant," as required by 18 U.S.C. § 3553(a)(1). Sanchez, 484 F.3d at 813. Fifth, we stated that the district failed adequately to consider whether the sentence it imposed would create significant disparities between Sanchez and other similarly situated defendants, see § 3553(a)(6). Sanchez, 484 F.3d at 813.

The Supreme Court granted Sanchez's petition for writ of certiorari, vacated this court's judgment, and remanded the case to us for further consideration in light of Gall. We have carefully reconsidered our prior decision in light of Gall and, for the following reasons, reenter our judgment, vacating the sentence, and remanding for resentencing.

Our "review of sentencing decisions is limited to determining whether they are 'reasonable.'" Gall, 128 S. Ct. at 594. We review the district court's sentence, regardless of whether the sentence imposed is inside or outside the Guidelines range, under a deferential abuse-of-discretion standard. Id. at 597. Our review proceeds in two parts.

4

First, we examine the sentence to ensure that the district court "committed no significant procedural error." Id. Such procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id. At this first stage of the inquiry, we continue to review the "district court's interpretation or application of the Sentencing Guidelines . . . de novo, and its factual findings . . . for clear error." United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir. 2008).

Second, assuming the district court's sentencing decision is procedurally sound, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Gall, 128 S. Ct. at 597. In doing so, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Id. We may not apply a presumption of unreasonableness to a sentence imposed outside the Guidelines range. Id. Rather, "we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. Our reasonable disagreement with the sentence imposed is insufficient to justify reversal of the district court. Id.

Applying Gall to the defects identified in our prior decision, we conclude that the district court's clearly erroneous factual determinations infected the sentence and constitute significant procedural errors that warrant vacating the sentence and remanding for resentencing. See Gall, 128 S. Ct. at 597 (identifying "selecting a sentence based on clearly erroneous facts" as one example of "significant procedural error"). As to the remaining errors identified in our prior decision and outlined above, we decline to decide whether those errors, standing alone, would lead us to conclude that the district court abused

its discretion in sentencing. However, we remind the district court on remand of the following:

> If [the district court] decides that an outside-Guidelines sentence is warranted, [the court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, [the court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

Gall, 128 S. Ct. at 597.

> We therefore VACATE the sentence and REMAND for resentencing.