United States Court of Appeals
Fifth Circuit

**F I L E D**

February 9, 2007

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

m 06-30115

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

VERSUS

BRUCE H. PERRIN,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana
m 3:05-CR-16

Before HIGGINBOTHAM, SMITH, and
DEMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Bruce Perrin pleaded guilty of two counts of receipt of child pornography and one count of possession of child pornography. The government appeals his sentence, claiming that the district court impermissibly departed from the applicable guideline range. Because the court failed to articulate sufficient reasons to justify the departure, we vacate the sentence and remand for resentencing.

I.

The Louisiana State University ("LSU") police received information that Perrin, an LSU student, was trading images of child pornography over the internet with someone in Kentucky. Pursuant to a search warrant, LSU police searched Perrin's residence and seized a computer and other digital media storage devices containing 4,237 images of child pornography, comprised of 3,942 still images and 295 videos.

Many of these images depict prepubescent children being raped by adults, and six depict

children engaged in bestiality. The presentence report ("PSR") provides three examples:

(1) a video depicting an adult male ejaculating into the mouth of approximately four-year-old female child while the child says, "please stop, stop, stop . . . .";

(2) multiple images depicting sexual activity between an approximately six-year-old female child and a dog; and

(3) images of an approximately three-year-old female child being anally penetrated by an adult male.

The pictures were segregated and categorized based on their content. For example, the folder entitled "young" contained pornographic images of children between the ages of three and ten.

Perrin admitted that he had been actively distributing, receiving, and possessing child pornography for several years. He had established a computer program that made his images available for trading over the internet at all times, and others had downloaded images of child pornography from his computer on hundreds of occasions. The National Drug Intelligence Center identified the children in 849 of the images as known victims of child pornography.

Before pleading guilty, Perrin assisted the government by providing information and offering to testify against a child pornography defendant in Kentucky. He also voluntarily entered counseling with a psychologist specializing in sexually deviant behaviors.

The guideline sentencing range was 121 to 151 months' imprisonment. The court granted the government's request for a one-level reduction based on Perrin's substantial assistance, which resulted in his ultimate sentencing range of 108 to 135 months' imprisonment. The statutory minimum was 60 months. The statutory range for supervised release following incarceration was 5 years to life.

Perrin was sentenced to the statutory minimum of sixty months' imprisonment, followed by ten years' supervised release. At the sentencing hearing the court described the crime's severity, citing the graphic details mentioned above. It found that Perrin was a substantial consumer but not a producer of child pornography and that Congress has concluded that possession of child pornography should be punished because if there were no consumers there would be a greatly reduced market. The court said that it had carefully considered the guidelines and had concluded that the penalties for possession of child pornography were disproportionate to those for producing such material, and reiterated that Perrin was not a producer.

The court found that Perrin was not a risk to the community and that there was no indication that he had ever "attempted to perform anything similar to the visual depictions that he possessed." Perrin was aware of the consequences of his conduct, and the court was impressed that he had voluntarily begun counseling. The court stressed that the ten years' supervised release would be onerous and that "[t]his sentence will double the typical amount of time spent under supervision."[1] The gov

_____

[1] The court appears to base this statement on the typical sentence administered by that particular court. A ten-year term of supervised release is toward the low end of the statutory range of five

(continued...)

ernment made an unsuccessful objection to the unreasonableness of the sentence, particularly its departure to the statutory minimum.

In the written "Statement of Reasons," the court repeated its bases for Perrin's sentence. The sentence "reflects the seriousness of the offense and provides just punishment for one who possessed child pornography." The written statement also emphasized that the sentence doubles "the typical amount of time spent under supervision."

## II.

After *United States v. Booker*, 543 U.S. 220 (2005), we continue to review a district court's application of the sentencing guidelines *de novo* and its findings of fact for clear error. *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006) (citing *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005)). "The ultimate sentence is reviewed for 'unreasonableness' with regard to the statutory sentencing factors enumerated in [18 U.S.C. § 3553(a)]."[2]

*United States v. Duhon*, 440 F.3d 711, 714 (5th Cir.) (citing *Booker*, 543 U.S. at 261), *petition for cert. filed* (U.S. May 18, 2006) (No. 05-11144).

Sentences fall into one of three categories: (1) within the guideline range, (2) an upward or downward departure as allowed by the guidelines, or (3) outside the guideline range. *United States v. Smith*, 440 F.3d 704, 706-07 (5th Cir. 2006). Perrin's sentence is in the third category and thus is considered a "non-

---

[1](...continued)
years to life, and a sentencing guidelines policy statement recommends that convicted sex offenders receive the statutory maximum term of supervised release, which in Perrin's case is life. *See* discussion *infra* Part III.B.

[2] These factors include

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(continued...)

---

[2](...continued)
(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (2000).

guideline" sentence. Before imposing a non-guideline sentence, the court is "required to calculate the guideline range and consider it advisory." *United States v. Angeles-Mendoza*, 407 F.3d 742, 746 (5th Cir. 2005). If the court then decides to impose a non-guideline sentence, the guideline range should be used as a frame of reference. *Smith*, 440 F.3d at 707.

A non-guideline sentence must be supported by a careful articulation of the reasons for the appropriateness of the sentence. *United States v. Mares*, 402 F.3d 511, 519 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005). This enables the reviewing court to determine whether the sentence is unreasonable according to the § 3553(a) factors. The more a sentence departs from the guideline range, the "more compelling the justification based on factors in section 3553(a) must be." *Smith*, 440 F.3d at 707 (internal quotations and citations omitted).

*Smith* articulates the specific test for determining whether a non-guideline sentence is unreasonable under *Booker*. "A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Id.* at 708.

### III.

Perrin's sentence fails the first and second prongs of the *Smith* test and thus is unreasonable. We examine why this is so.

### A.

The court did not give sufficient weight to the "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1), (2)(A). Though it noted the severity of the offense, the court failed to explain how this severity, particularly the images' depravity and numerosity, factored into its decision to depart downward from the guideline range to the statutory minimum.

Even for child pornography, the images possessed by Perrin were unusually reprehensible. A downward departure is unreasonable, based at least in part on the content of the images, where the defendant possessed images that depicted the severe molestation of girls aged eight to ten years. *Duhon*, 440 F.3d at 719. "Under the circumstances, the district court misjudged the seriousness of Duhon's offense. As a result, the sentence imposed fails to advance sufficiently the sentencing objectives enumerated in section 3553(a)(2)-(A)-(B)." *Id.* at 720.

Based on the examples in the PSR, the images possessed by Perrin are at least as severe as those described in *Duhon*. Perrin's images depict the rape of girls as young as three, compared to the eight-year-olds in Duhon's pictures. Perrin also possessed images depicting children involved in bestiality. Under *Duhon*, the district court misjudged the severity of the crime, as measured by the depravity of the images, and the sentence does not sufficiently account for the sentencing factors of §§ 3553(a)(1)-(2), as required by *Smith*.

In addition, the number of images possessed by Perrin (4,237) warrants a finding that this crime is particularly severe. The guidelines consider the number of images in calculating the offense level, but the scale has a maximum level of "over 600 images;" Perrin possessed over seven times that number.

4

Further, if the current version of the guidelines had been used, more than 26,000 images of child pornography would have been attributed to Perrin for sentencing purposes.[3]

Based on the content and numerosity of the images possessed by Perrin, this crime falls at the more severe end of possession of child pornography cases. The court did not articulate sufficiently how the severity of the crime factored into its decision to depart from the guideline range and impose the minimum sentence allowed by law, so the sentence fails to advance sufficiently the objectives stated in § 3553(a)(2)(A)-(B).[4]

### B.

The court gave four reasons for its departure. First, Perrin did not produce child pornography, but merely possessed it. Second, he voluntarily entered counseling after his arrest. Third, he understood the consequences of his actions and wanted to rehabilitate himself. Finally, the term of supervised release was particularly onerous. Each of these factors was improper for the court to consider.

The court noted repeatedly that Perrin was a consumer, not a producer, of child pornography. It also noted that there was no evidence that he had tried to perform the actions depicted in his illegal pornography collection. These are improper reasons for imposing a non-guideline sentence. The fact that a defendant did not commit, or have the tendency to commit, a more severe crime does not warrant a downward departure for the crime actually committed.[5]

The guidelines make a sharp distinction between the production and the possession of child pornography:

> Congress established a series of distinctly separate offenses respecting child pornography, with higher sentences for offenses involving conduct more likely to be, or more directly, harmful to minors than the mere possession offense. Similarly, the guidelines clearly reflect consideration of whether and the degree to which harm to minors is or has been involved.

*Duhon*, 440 F.3d at 718 (quoting *Grosenheider*, 200 F.3d at 332-33). If Perrin had produced the images, the guideline range would have been 324-405 months, significantly higher than the range he ultimately faced. Thus, his guideline range already accounted for the fact that he did not produce child pornography, and it was impermissible for the court to reduce the sentence on the basis that he did not commit an additional, more egregious, crime.

---

[3] The probation office used the 2003 edition of the guidelines manual because it was "less onerous" and its use was intended to "avoid any *ex post facto* issues." The difference between the 2003 and 2005 editions lies in the formula used to convert pornographic videos into an equivalent number of still images for sentencing enhancement purposes. Under the 2003 edition, a video counts as one image, but under the 2005 edition, in force at the time of sentencing, each video is to be considered as seventy-five still images.

[4] Also related to the severity of Perrin's offense is the district court's failure to describe its consideration of the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6).

[5] *See United States v. Grosenheider*, 200 F.3d 321, 333-34 (5th Cir. 2000); *Duhon*, 440 F.3d at 718-19.

5

The court also based its sentence on Perrin's contrition and his commencement of counseling. These reasons are inappropriate grounds for imposing a non-guideline sentence, because they are already accounted for in the reduction for acceptance of responsibility. *United States v. Goldsmith*, 192 Fed. Appx. 261, 267 (5th Cir. 2006). In *Goldsmith* the district court had given a non-guideline sentence because, *inter alia*, it found that the defendant had accepted responsibility for his crime and had participated in a drug rehabilitation program after his arrest. We concluded that, under *Smith*, both of these are improper factors that could not be relied on to justify a non-guideline sentence. The first is accounted for, on its face, in the acceptance-of-responsibility reduction. The second, participation in counseling, is accounted for in the same reduction.[6]

Like the defendant in *Goldsmith*, Perrin accepted responsibility for his actions and entered a counseling program after his arrest. Although *Goldsmith*, being an unpublished decision, does not bind us, its reasoning is persuasive, and we adopt its holding now as published authority. A defendant's contrition and commencement of counseling are already accounted for, according to the guidelines manual, in the acceptance-of-responsibility reduction and thus are inappropriate as a basis for a further sentence reduction.

Finally, the court in the instant case noted the severity of the ten-year supervised release term. This is not a valid reason for a departure in the length of incarceration because, despite the court's pronouncement, a ten-year term of supervised release is less onerous, not more, than what is recommended for receipt and possession of child pornography. The statutory range is five years to life, and the district court was certainly within its discretion to impose a term on the low end of this range. But "Congress and the Sentencing Commission intended to impose life terms of supervised release on sex offenders. Congress explicitly recognized the high rate of recidivism in convicted sex offenders."[7]

Thus, Perrin's supervised release term was significantly lower than that recommended by Congress and the Sentencing Commission. It is inappropriate to use such a term of supervised release as the basis for a departure from the guideline range.

IV.

*Booker* provided sentencing courts significant flexibility, but that flexibility is not boundless. Non-guideline sentences require the greatest justification, and here the district court fell short. Perrin's sentence fails the first two prongs of *Smith*, because the court did not adequately account for the severity of the crime, and each of the four reasons given for the departure was improper. Without these reasons, no justification remains for the significant departure from the guideline range.

The judgment of sentence is VACATED and REMANDED for resentencing.

---

[6] *Goldsmith*, 192 Fed. Appx. at 267 (citing U.S.S.G. § 3E1.1 comment. n.1(g) ("In determining whether a defendant qualifies under subsection (a), appropriate considerations include . . . post-offense rehabilitative efforts (e.g., counseling)")).

[7] *United States v. Allison*, 447 F.3d 402, 406 (5th Cir. 2006) (citing 18 U.S.C. § 3583(k); H.R. REP. NO. 108-66 (2003) (conf. rep.)).