NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0224n.06
Filed: April 29, 2008

No. 06-5368

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RONALD BEACH, | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

Before: GIBBONS and SUTTON, Circuit Judges; and BECKWITH, District Judge.[*]

PER CURIAM. Ronald Beach pleaded guilty to one count of knowingly transporting and shipping child pornography in interstate commerce, *see* 18 U.S.C. § 2252(a)(1), and to one count of knowingly receiving child pornography that has traveled in interstate commerce, *see id.* § 2252(a)(2). The district court sentenced Beach to 96 months' imprisonment, varying downward from a guidelines range of 210–240 months. The government appealed. Because the district court did not exceed its discretion in granting this variance, *see Gall v. United States*, 128 S. Ct. 586, 597 (2007); *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008), we affirm.

---

[*] The Honorable Sandra S. Beckwith, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation.

1

I.

On January 10, 2005, FBI Special Agent Kenneth Jensen, acting in an undercover capacity, entered a chat line entitled "100% preteengirlSexPics." PSR ¶ 5. There he saw an advertisement for a file server named "WOOOOHOOO." *Id.* The server operated as an automated exchange system, meaning that users could download materials from it provided they first uploaded a certain amount of materials to the server. The server included the following access "rules":

> This is a private server, I do not allow federal, state or local government employees, nor anyone who has or plans on sharing any information with them. Period. . . . I now only want movies, movies must be over 5MB, must be **8/to/14** . . . I am watching so please play by the rules.

PSR ¶ 7. Jensen connected with the server and uploaded four corrupted files in order to gain the credit necessary to download files from the server. He downloaded 15 video files from the server, 14 of which depicted minors engaged in sexually explicit conduct.

Jensen obtained an administrative subpoena for the Internet protocol address for the server and learned that the relevant subscriber was the Okolona Fire Department in Louisville, Kentucky. Federal law enforcement agents obtained a search warrant to search the fire station, where the agents discovered that Beach, a volunteer fireman who lived in a room at the firehouse, ran the server. Beach acknowledged operating the server but reported shutting it down and erasing all of his files two weeks earlier because he felt guilty about what he was doing. The agents seized two hard drives associated with Beach's computer. While the agents could not recover the data on one drive, they recovered 13 video clips from the other drive, which depicted minors engaged in sexually explicit conduct.

A grand jury indicted Beach, charging him with (1) knowingly transporting and shipping via interstate commerce visual depictions of a minor engaged in sexually explicit conduct and (2) knowingly receiving via interstate commerce visual depictions of minors engaged in sexually explicit conduct.  Beach pleaded guilty to both counts.

The PSR gave Beach a base offense level of 22 and recommended the following enhancements:  2 levels because the material on his computer involved prepubescent minors and/or minors under the age of 12, U.S.S.G. § 2G2.2(b)(2); 5 levels because Beach had been involved in distribution for the receipt of a thing of value, namely more child pornography, *id.* § 2G2.2(b)(3)(B); 4 levels because the images portrayed sadistic or masochistic conduct or other depictions of violence, *id.* § 2G2.2(b)(4); 2 levels for using a computer to receive, possess and distribute the materials, *id.* § 2G2.2(b)(6); and 5 levels because the offense involved more than 600 images, *id.* § 2G2.2(b)(7)(D).  A 3-point deduction for acceptance of responsibility reduced Beach's offense level from 40 to 37.  When combined with a criminal history score of zero, Beach's offense level (after accounting for the statutory maximum) yielded a guidelines range of 210 to 240 months' imprisonment.  Neither party objected to the PSR.

At the sentencing hearing, Beach testified that he was addicted to child pornography but explained that he would experience cycles where he would not view any child pornography for months at a time before having a relapse.  Beach also offered the testimony of one of his therapists, David Harmon, who described Beach's troubled family life, including time spent in foster care and difficulty in school.  Beach would be "amenable to treatment," Harmon testified, based on his "ownership" of the problem and his new-found ability to appreciate the child victims of his conduct.

*United States v. Beach*, 06-5368

JA 186–87.  Members of Beach's therapy group testified about his contributions to their own progress.

The court accepted the PSR's recommended guidelines calculation, then engaged in a lengthy discussion of the § 3553 factors.  The court recognized that Beach's use of the server increased his culpability but noted that Beach operated it for just 30 days.  Beach's frequent attempts to stop viewing child pornography prior to the creation of the server, the court found, reflected Beach's guilt, "if not self-hatred."  JA 169.  In considering an appropriate sentence, the court gauged the continuum of possible sentences running from the 5-year statutory minimum to the 20-year statutory maximum.  It stated that Beach's case was neither "a [5]-year case" nor a "20-year case" and expressed concern that the 210-month guidelines minimum sentence was "too long."  JA 173–74.

The district court proceeded to impose concurrent sentences of 96 months (8 years) on both counts in addition to concurrent 3-year terms of supervised release.  In its written judgment, the court elaborated on why it varied downward from the guidelines:

> Although the defendant's use of a file server program is an aggravating factor, the defendant operated the f-serve for a limited period of time (30 days) and voluntarily closed it down prior to any contact from law enforcement.  Mr. Beach testified that one reason he closed the f-serve was that he received far more images than he had anticipated or imagined.  Further the Court notes the computer had only a few images when it was seized by the FBI.  The statutory penalty for this offense is five to twenty years.  The Court does not view this defendant as among the least culpable offender[s] to be prosecuted under this statute, but views him in the second tier of offenders whose offense would be covered by this statute.  Thus a sentence at the lower side of the mid-range is deemed appropriate.

JA 56.

II.

The government concedes that Beach's sentence was free of procedural error. Its appeal thus focuses on "the substantive reasonableness" of his sentence, *Gall v. United States*, 128 S.Ct. 586, 597 (2007), and more specifically on whether the district court abused its discretion in granting this downward variance, *id.*

When a district court imposes a sentence outside the guidelines, we may "take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Id.* at 595. But in applying abuse-of-discretion review, we "must give due deference to the district court's decision that the § 3553(a) factors . . . justify the extent of the variance." *Id.* at 597; *see also United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008).

The district court did not commit reversible error in issuing this 96-month sentence. After considering the applicable guidelines range (210–240 months), *see Gall*, 128 S. Ct. at 596, the district court looked at the other § 3553(a) factors, *see id.*, found that "there is some bad[,] [t]here is some good," JA 174, and ultimately concluded that a lower sentence was appropriate to account for Beach's limited use of the server, his decision to end his criminal conduct before the government learned about it, his remorse and his prospects for rehabilitation through sex-offender treatment and mental health care.

The district court acknowledged that Beach's use of the server "ratchet[s] . . . up" the culpability of the offense, JA 169, but noted several mitigating factors: The server was active only for a short period of time (30 days), and Beach voluntarily shut it down before the authorities learned that he was the one who had operated the server. The district court appropriately considered these

mitigating factors, *see Gall*, 128 S. Ct. at 600 (noting that a defendant's voluntary withdrawal from a conspiracy was of "critical relevance"), both of which go to the nature and circumstances of the offense, *see* 18 U.S.C. § 3553(a)(1), and both of which suggest that Beach's attempts at a "turnaround [were] genuine, as distinct from a transparent attempt to build a mitigation case," *Gall*, 128 S. Ct. at 601; *see also* 18 U.S.C. § 3553(a)(2)(B).

The court also considered Beach's remorse, explaining that Beach "waffled back and forth and back and forth" by "going through this and then deleting images and then going through and deleting some images," all of which suggested that Beach possessed "some guilt . . . if not self-hatred." JA 169. *See United States v. Baker*, 502 F.3d 465, 469 (6th Cir. 2007) (upholding a downward variance based in part on defendant's remorse); *United States v. Husein*, 478 F.3d 318, 334 (6th Cir. 2007) (same).

The district court also accounted for other § 3553(a) factors—that the sentence protect society, deter future criminal conduct and provide effective treatment. In addition to a not-inconsequential eight-year prison sentence, the court imposed other conditions on Beach, such as mental health care, sex-offender treatment, sex-offender registration, a prohibition on accessing the Internet and a three-year term of supervised release. These conditions substantially limit Beach's liberty, *see Gall*, 128 S. Ct. at 595–96; *Grossman*, 513 F.3d at 597, and they offer some basis for believing that he will obtain the necessary treatment to pull himself out of this cycle of abuse.

Evidence also supports the conclusion that Beach is a better candidate for rehabilitation than the typical sex offender. At sentencing, the judge emphasized Beach's exceptional progress in therapy, stating that his treatment success "has a part to play" in considering Beach's "needs for

rehabilitation . . . [and] treatment in the most effective manner." JA 168; *see also* 18 U.S.C. § 3553(a)(2)(D); *United States v. Cherry*, 487 F.3d 366, 372 (6th Cir. 2007) (upholding a downward variance where the district court relied in part on the defendant's "progress in counseling"). "[Y]ou should . . . commend yourself," the judge told Beach, "[n]ot just for going to treatment," but for being "open to treatment from the very beginning," "go[ing] in with an open mind" and taking it seriously, unlike many counseling patients who are not "open to the possibilities" and who "go in with [their] own preset notions and preconceived notions of what [they] need, which thwarts the treatment." JA 166. In support of her observation, the judge pointed to the "commendable" testimony from numerous individuals who saw Beach's progress first hand. *Id.* An employee of the sex-offender program testified that, based on Beach's involvement in 25 treatment groups, "he is remarkable." JA 194; *see also* JA 190 (stating that in preliminary individual sessions, Beach "[a]lmost immediately" took responsibility for his actions and "was very open, forthcoming. He was pursuing questions within himself why this happened. And we almost immediately integrated him into the group process"); JA 191 (expressing "shock[]" that, in response to being named in a newspaper article about child pornography, Beach was not fearful like most clients, but rather was "glad" that the article was published because it would "educate the public"); *id.* (stating that Beach "is more proactive than many of the other people in the group. He has pushed the group forward on many occasions . . . And in many ways he's farther along than some of the people that are toward the end of the therapy or the treatment").

Beach's fellow group members not only applauded his progress but also explained how it had influenced their own steps forward. *See* JA 109 ("A lot of guys in group initially do not talk

7

much . . . . [B]ut [Beach] has been talking right off the bat, wanting help."); *id.* ("[L]istening to Mr. Beach and his goals, I kind of re-evaluated my life and goals and put myself back on the right track . . . ."); JA 196 ("I wish I had come forward a lot faster as [Beach] has. It made me realize deeper thoughts of myself. And a lot of things I realized [were] from Mr. Beach, and he's helped out a lot.").

In contending that this downward sentence exceeded the district court's discretion, the government first argues that the district court gave Beach too much credit for voluntarily shutting down the server, claiming that he did so only because he received more images than his computer could handle. While Beach acknowledged being overwhelmed by the volume of images, he also testified that the number of images prompted him to regret his actions, which in turn caused him to shut down the server. *See, e.g.*, JA 202 (PSR stating that "Beach reported that he had shut down the f-serve approximately two weeks prior and erased all of his files because of his feelings of guilt"). The district court, it is true, had no obligation to accept this explanation, but the record hardly precluded it from doing so.

The government next points out that, after Beach shut down the server in January, he set it up again for a "very short time" in February, undermining the court's statement that the server was active for just 30 days. JA 106. This alleged discrepancy does not establish clear error. All we know is that Beach operated the server "for *approximately* one month," JA 202 (emphasis added), and that he set up his server a second time "for a very short time" during which people from 29 countries visited it, JA 106. Nothing tells us whether the second period amounted to one day or one week. "[C]ompetent evidence in the record" thus supports the district court's 30-day approximation,

*United States v. Beach*, 06-5368

*United States v. Jeross*, No. 06-2257, __ F.3d ___, 2008 WL 906207, at *4 (6th Cir. Apr. 4, 2008), and no evidence shows that he deployed the server for an appreciably longer period of time.

That Beach "was distributing *twice* as much as he was receiving," Gov't Br. at 23, does not compel a higher sentence. The government offers no precedent for the notion that sentencing courts must account for a high distribution-to-receipt ratio or, more to the point, for the notion that a court cannot vary downward when such a ratio exists. At any rate, the record shows that the court appreciated that "[t]here was trading going on" and that "[t]here was distribution," JA 173, appreciated that these factors increased the seriousness of Beach's offense, *see id.*, but still insisted on a substantial variance in view of other circumstances—an exercise of discretion that *Gall* permits rather than prohibits.

The government adds that the sentencing court placed too much weight on the mandatory minimum sentence and not enough weight on the guidelines. But while the court considered the statutory minimum, it also considered the statutory maximum. And, through it all, the court did not lose sight of the guidelines range, but in the end made a judgment that "an individualized assessment based on the facts presented," *Gall*, 128 S. Ct. at 597, required a substantial downward variance. The court's attention to the guidelines and its thorough discussion of the § 3553(a) factors show that it "g[a]ve serious consideration to the extent of [the] departure from the Guidelines" and provided "sufficient justifications" for its sentence. *Id.* at 594. While we cannot say that this is the sentence we would have given, neither can we say that this variance exceeded the discretion *Gall* gives district court judges.

9

III.

For these reasons, we affirm.