RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0333p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 08-4064

ADAM STALL,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00106-001—Susan J. Dlott, Chief District Judge.

Argued: August 5, 2009

Decided and Filed: September 11, 2009

Before: BOGGS, ROGERS, and WHITE, Circuit Judges.

―――――――――――

## COUNSEL

**ARGUED:** Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellant. Scott Aaron Rubenstein, RUBENSTEIN & THURMAN, L.P.A. INC., Cincinnati, Ohio, for Appellee. **ON BRIEF:** Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellant. Scott Aaron Rubenstein, RUBENSTEIN & THURMAN, L.P.A. INC, Cincinnati, Ohio, for Appellee.

BOGGS, J., delivered the opinion of the court, in which WHITE, J., joined. ROGERS, J. (p. 21), delivered a separate dissenting opinion.

―――――――――――

## OPINION

―――――――――――

BOGGS, Circuit Judge. Adam Stall pleaded guilty to two counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4). After observing that Stall had no criminal history and properly determining that the Sentencing Guidelines advised a range

of 57-71 months of imprisonment, the district court sentenced Stall to only one day of incarceration and a ten-year period of supervised release.[1] In this appeal, the United States contends this "non-custodial" sentence was procedurally and substantively unreasonable. Because the government at sentencing put forward almost no evidence for why a sentence within the Guidelines was warranted and did not raise the same cogent arguments it presents only on appeal, we affirm, holding that the district court's explanation for the extent of its downward variance was sufficient in light of the record made before it.

I

The FBI identified Stall in the course of investigating someone else for the distribution of child pornography. In July 2007, FBI agents visited Stall at his home and told him they suspected him of downloading child pornography. He immediately became "remorseful and distraught" and confessed to accessing images the previous day. Stall also expressed a desire to obtain mental health treatment, said he wanted to stop viewing such images, and told agents that he "would never physically do anything to a child."

At all times, Stall cooperated with the investigation, telling agents that he received e-mails containing child pornography and downloaded such images through a peer-to-peer file sharing system. He explained that he would view and then delete the material and that by the time of his arrest, he had been downloading child pornography for at least five years. Stall consented to a search of his computer, which uncovered 18 images of child pornography. These images included photographs of adult men penetrating girls under the age of 12, and involved children previously identified by the National Center for Missing and Exploited Children as victims of sexual abuse.

Stall pleaded guilty to two counts of knowingly receiving child pornography. In calculating the applicable Sentencing Guidelines range, the parties and the U.S.

---

[1]To impose a term of supervised release, a sentence must include at least a nominal prison sentence. *See* U.S.S.G. ch. 7, pt. A, § 2(b).

Probation Office determined that under U.S.S.G. § 2G2.2, Stall's base offense level was 18. Two levels were added because the material depicted a prepubescent minor under the age of 12; four levels were added because the material portrayed sadomasochistic conduct; two levels were added for the use of a computer; two levels were added because the offense involved between 10 and 150 images; two levels were deducted for acceptance of responsibility; and a further one-level deduction was made because of his timely plea. Stall's adjusted offense level was 25 and, with his Criminal History of I, resulted in a Guidelines range of 57-71 months.

The Presentence Report ("PSR") recommended a sentence of 57 months of imprisonment, the bottom of the Guidelines range, and an additional three years of supervised release. Although the PSR did not recommend a variance, it identified one possible consideration that might warrant an upward variance. By Stall's own account, he viewed many more than the 18 images that formed the basis of his indictment. Weighing in favor of a downward variance, however, the PSR referenced "the defendant's immediate expression of remorse and empathy for children harmed as a result [of his crime]" as well as the fact that "Stall quickly sought mental health treatment and continues to express significant remorse."

Although both parties had an opportunity to supplement the PSR, the government declined to do so. The defendant's sentencing memorandum urged the court to vary downward, citing Stall's remorse and contending that the collateral consequences of prosecution, including the dissolution of his engagement, made a lengthy sentence of imprisonment unnecessary to accomplish the Guideline's objectives. Further, Stall argued that continuing outpatient treatment, not prison, would facilitate his rehabilitation.

At the defendant's request, the district court agreed to hear testimony from Stall's psychologist, Dr. Stuart Bassman, who said that Stall took "refuge" in pornography (first adult, then child) because he was "isolated" and "lonely." Dr. Bassman explained that Stall suffered from undiagnosed and untreated depression at the time of his offense. For some people, according to Dr. Bassman, self-loathing manifests in playing video games

or watching television for hours on end; for Stall, it manifested in the obsessive and compulsive browsing of the internet.

Dr. Bassman's testimony then turned from the underlying reasons that Stall downloaded child pornography to the risk he would do so again. According to Dr. Bassman, it was unlikely that Stall would reoffend. First, Stall did not have a "criminal mind" or exhibit the qualities of a psychopath. Second, Stall was now being treated for depression, which Dr. Bassman said made him less likely to reoffend and more likely to respond to treatment for sexual compulsive disorder. Third, Stall was demonstrably committed to therapy, showing up on time, never missing an appointment, and expressing remorse for the role he played in the exploitation of children. And fourth, "internet sex offenders were significantly less likely to fail in the community than child molesters in terms of all types of recidivism."

In Dr. Bassman's view, if Stall continued treatment and remained responsive, "the prognosis is positive" and Stall could "make a contribution to society." And though Dr. Bassman never claimed that therapy would be unavailable to Stall in the event that he was incarcerated, he did explain that a term of imprisonment could set back Stall's treatment by causing him to withdraw into himself. Put another way, the same treatment might be less effective in the prison context.

The government presented no psychological evidence of its own, either about Stall's specific risk of reoffending or the risk of recidivism among internet sex offenders as a general matter. Although the government cross-examined Dr. Bassman, its only line of questioning concerned the possibility that Stall would reoffend in the event that he discontinued treatment, a contingency the government never disputed was unlikely. Dr. Bassman explained that while it is true that the risk of reoffending increases if treatment is terminated, in his own practice he generally deals with this legitimate concern by alerting authorities "immediately by a phone call as well as a letter" in the event that a convict patient misses an appointment.

At the close of the evidentiary hearing, the district court said the defendant's sentencing memorandum was "well done" and requested that the parties submit

additional memoranda on "how low in the guidelines or below the guidelines judges have gone, particularly in the Sixth Circuit." In response, Stall submitted a second sentencing memorandum that called for a "dramatic downward variance" and cited many cases from federal courts of appeals that affirmed significant downward variances in cases involving possession of child pornography. Stall's memorandum further advised the sentencing court that "[a] prison sentence, or a lengthy prison sentence, would disrupt his treatment," and that special conditions of supervision offered an alternative to incarceration that would ensure Stall's continued participation in a comprehensive treatment regiment.

For its own part, the government submitted a cursory, two-page memorandum, contending that several of the considerations identified by the defendant, such as Stall's level of education, mental illness, and supportive family, were impermissible. The government also warned the court that the greater its variance, the more compelling its explanation must be. For this proposition, the government cited a single Fifth Circuit case on proportionality review, and neglected to discuss the Supreme Court's recent clarification on this element of sentencing review. Govt. Sent. Mem. 2 (citing *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005)); *see Gall v. United States*, 128 S. Ct. 586, 591 (2007). In fact, the Fifth Circuit case is the only case, from any court, that the government cited in its sentencing memorandum.

While the government urged the court to sentence the defendant in accordance with the PSR, it did not make any affirmative arguments about why Stall's circumstances or this offense compel a within-Guidelines sentence. Other than noting that a substantial variance calls for a significant explanation, the government's only argument was that considerations cited by the defense—namely the defendant's age, mental condition, and family ties—were "typically irrelevant."

At the sentencing hearing, the district court adopted without objection the facts outlined in the PSR, then correctly calculated the advisory Guideline range and outlined the maximum penalties provided under the relevant statutory provisions. The court

enumerated all of the 18 U.S.C. § 3553(a) factors and discussed at length their application to this case.

With respect to "the nature and circumstances of the offense and the history and characteristics of the defendant," the court observed that Stall had no criminal history, had been gainfully employed prior to his arrest, and had done well in school. The district court also stressed that there was no reason to believe that Stall had distributed child pornography or had improper contact with actual children. Indeed, the district court believed that Stall was innocent of other wrongdoing and had not committed graver offenses.

Next, the district court considered the need to provide just punishment, observing that "[t]he collateral consequences of this case have also been considerable." Stall's education and career have been "put on hold" and his fiancee broke off their engagement, consequences, the district court implied, that constituted significant punishment.

The district court then addressed the need to deter Stall from reoffending, to protect the public from the defendant, and to ensure the defendant received treatment. In discussing these considerations, the court revealed it was contemplating a sentence well below the Guidelines range:

> In this case, a term of imprisonment will not protect the public or facilitate the provision of needed treatment any more than a long period of home incarceration and a number of severe restrictions. Mr. Stall's psychologist has opined that he is amenable to treatment. Mr. Stall's doctor has stated he believes that Mr. Stall . . . will be able to give up pornography as a short-term, immediate escape as a remedy to his problems [and that h]is treatment regimen will help him address the underlying forces that caused him to turn to pornography in the first place . . . .

Bolstering this conclusion, the district court also observed that Stall's "strong support network combined with his treatment regimen will reduce the likelihood of recidivism and protect the public." Indeed, the district court went so far as to suggest that a term

of incarceration might actually increase the probability of Stall reoffending, echoing Dr. Bassman's earlier testimony.

As a final consideration, the district court referenced "the defendant's immediate expression of remorse and empathy for children harmed as a result of his use of the computer to view child pornography . . . ." The PSR mentioned these facts as a conceivable basis for a downward variance, and the district court seemed convinced, observing, "[a] sentencing court may depart downward if it finds that remorse is present to an exceptional degree."

Both sides then had another opportunity to present arguments. Stall's attorney reiterated the case for a downward variance, remarking, "I can honestly say in the almost 41 years that I have been practicing law that I've never been so certain about a defendant succeeding in the future." The government requested a sentence within the Guidelines, making only a single argument in support of this recommendation: Stall downloaded images over a period spanning several years and many more images were likely involved than the 18 for which he was indicted.

The district court then sentenced Stall to one day of imprisonment, ten years of supervised release, a $5,000 fine, and a $200 special assessment. The court imposed an extensive series of conditions for Stall's supervised release, including prohibiting the defendant from leaving Ohio and Kentucky, using a computer, having contact with minor children, and loitering in any place minors congregate such as sporting events and shopping malls. The court also said that the defendant may be subject to periodic polygraph examinations to confirm his compliance with these restrictions and, for the first year of his sentence, will be subject to home confinement.

Following this recitation, the court gave the parties one last opportunity to object to the sentence. The government did object, without stating the grounds of its objection. In this appeal, the government contends that Stall's one-day sentence was unreasonable on three separate grounds. First, the government contends that the record simply does not justify, as a substantive matter, a variance of this magnitude. Second, the government contends that the district court failed to consider several of the § 3553(a)

factors relevant to this case.  Third, the government contends that the district court relied on impermissible considerations in varying downward.

II

The government's primary argument for vacating Stall's sentence concerns the substantive justification for such a drastic variance from the Guidelines.  According to the government, the circumstances of Stall's offense and the record presented to the district court simply does not justify a variance of this magnitude.  The defendant responds that the district court's findings and the evidence as a whole provided sufficient support for a sentence of one-day imprisonment and a lengthy term of supervised release, and it is not for us to second-guess this tenable conclusion on appeal.

While the standard of review does not change based on whether a sentence is "inside, just outside, or significantly outside the Guidelines range," *Gall v. United States*, 128 S. Ct. 586, 591 (2007), the greater the district court's variance, the more compelling the evidence must be. *Id.* at 597 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one."); *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008) (holding that it is not improper to "require some correlation between the extent of a variance and the justification for it").

At Stall's sentencing hearing, the government gave only one reason that a within-Guidelines sentence was warranted: Stall had confessed to downloading child pornography for a period of years and that many more images were likely involved than could be recovered from his computer.  In referencing this evidence, the government implied (but never said explicitly) that a non-custodial sentence would fail to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Even though few images were found, it is no doubt significant that by Stall's own account he was engaged in this illegal activity for a period of years.  Stall may be a first-time offender, but all this means here is that he most likely repeatedly offended and was caught a single time.  Nevertheless, the government could have argued, based on Stall's

statements, that he possessed 150 images or even more, giving rise to an additional enhancement under U.S.S.G. § 2G2.2(b)(7). But the government did not contend the number of images warranted a longer Guidelines range, which suggests it did not believe the import of this evidence was terribly significant or clear.

The government also mentions in this appeal that Stall understood he was in need of medical treatment for some non-trivial period prior to meeting the FBI agents who knocked on his door, yet he never sought help for this problem. The district judge was aware of these issues and nevertheless varied downward, indicating that she believed evidence that Stall could be rehabilitated and was unlikely to reoffend was more compelling. Explaining why a lengthy term of incarceration was unnecessary, the district court observed that Stall was committed to therapy, that treatment was more likely to be effective in a non-custodial context, and that the terms of supervised release adequately protected the public by ensuring that authorities would learn if Stall discontinued therapy. In this respect, the extent of the district court's variance is explained and can be distinguished from a case like *United States v. Pugh*, in which the Eleventh Circuit reversed a district court's one-day sentence for failing to include any term of supervised release. 515 F.3d 1179, 1202 (11th Cir. 2008) ("Despite the district court's strong conviction that Pugh would not suffer from recidivism, the resulting sentence does not provide a sufficient mechanism to monitor Pugh for a lengthy time, and thus protect the public from any future crime, as contemplated in 18 U.S.C. § 3553(a)(2)(C).").

There are reasons to question the district court's judgment. The district court could have more readily identified with the defendant because of his privileged background and the fact he attended college, and this comfort with the defendant could have informed its decision not to sentence him to a lengthy term of imprisonment, as advised by the Guidelines and recommended by the PSR. The court's suggestion that Stall is more amenable to treatment outside of prison because prison would make him depressed and withdrawn seems unlikely to be a winning argument for a defendant from different circumstances. *See, e.g.*, *United States v. Bailey*, 488 F.3d 363, 369 (6th Cir.)

(affirming a district court's discretion to reject this argument because "[a]ny defendant convicted of a crime could argue that his rehabilitation is in jeopardy because he is incarcerated with other people convicted of crimes."), *cert. denied*, 128 S. Ct. 507 (2007).

Still, despite problems with this sentence, the factual findings on which it was based were not clearly erroneous and give a reasonable explanation for the extent of the variance. *Cf. United States v. Grossman*, 513 F.3d at 598. The district court explained why a lengthy term of supervised release as opposed to incarceration would adequately deter Stall and protect the public. Although there may be greater doubt as to whether this sentence promotes just punishment, both the duration and the conditions of Stall's supervised release are such that we likewise cannot say that the sentence constitutes an abuse of discretion. The government correctly notes that sentences of probation or supervised release are qualitatively less severe than custodial sentences "of equivalent length," Br. Appellant at 33 (citing *Gall*, 128 S. Ct. at 595), but overlooks that the same Supreme Court case it cites for this proposition nevertheless affirmed a sentence of three years of probation and no imprisonment for a defendant whose Guidelines range called for a 30-37 month term of imprisonment. *Gall*, 128 S. Ct. at 591, 593. More to the point, the government disregards both the substantial restrictions placed on the liberty of those sentenced "only" to supervised release, *Gall*, 128 S. Ct. at 595, and that Stall's sentence of ten years of supervised release is 27 months longer than the total period of incarceration and supervised release recommended by the PSR and the government.

At Stall's sentencing hearing, the Assistant United States Attorney did not specifically contest any of the district court's reasons for varying downward or the testimony of the defendant's psychologist about why a non-custodial sentence would facilitate Stall's treatment and protect the community. Nor did the government say that a non-custodial sentence would fail to deter Stall specifically, deter similarly situated offenders generally, or avoid unwarranted sentencing disparities. Br. Appellant at 23-24. Only on appeal does the government claim, for the first time, that a one-day sentence of imprisonment will result in unwarranted sentencing disparities and that Stall's sentence

fails as a substantive matter to promote general deterrence. Because these arguments were never presented to the district court, we review their substantive import for plain error. *United States v. Vonner*, 516 F.3d 382, 391-92 (6th Cir. 2008) (en banc) ("If, under the heading of 'substantive reasonableness,' a defendant argued on appeal that the length of his sentence was too long because it did not account for the fact that he had voluntarily left a drug-trafficking conspiracy and had turned away from a life of crime before the police uncovered the conspiracy, we would apply plain-error review to these two arguments if the defendant had never presented them to the district court.") (citations omitted).

We cannot say in light of either of the government's new arguments that the district court committed plain error. Despite the district court's request that the parties submit briefing on the potential for a downward variance to result in sentencing disparities, the government did not cite a single case in either its Sentencing Memorandum or at the sentencing hearing. Several cases cited by the defendant indicated why these circumstances might warrant a substantial downward variance. Our own law also does not indicate that the district court's judgment was clearly in error.

On two occasions, we have considered whether one-day sentences for possession of child pornography are substantively reasonable. *See United States v. Prisel*, 316 F. App'x 377 (6th Cir. 2008); *United States v. Camiscione*, 207 F. App'x 631 (6th Cir. 2006).[2] Both these cases involved offenses that occurred prior to the Sentencing

---

[2]We have also decided a number of cases involving less significant downward variances for possession and/or distribution of child pornography. Since *Gall*, we have reversed the district court on only one occasion. *Compare United States v. Harris*, 2009 WL 2222085 (6th Cir. July 27, 2009) (holding an 84-month sentence was unreasonable for possession and distribution (29,675 images) and a Guidelines range of 210-262 months) *with United States v. Mikowski*, 2009 WL 1546375 (6th Cir. June 3, 2009) (affirming a 192-month sentence for possession and distribution (5,140 images) and a Guidelines range of 240 months); *United States v. Weller*, 2009 WL 1349779 (6th Cir. May 13, 2009) (affirming a 120-sentence for possession and distribution (10,000 images) and a Guidelines range of 324-405 months); *United States v. Edmiston*, 324 F. App'x 496 (2009) (per curiam) (affirming a 12-month sentence for possession (30 images) and a Guidelines range of 51-63 months); *Prisel*, 316 F. App'x 377 (affirming a one-day sentence for possession (1,189 images) and a Guidelines range of 27-33 months); *and Grossman*, 513 F.3d 592 (affirming a 66-month sentence for possession, enticement, and distribution (600 images) and a Guidelines range of 135-168 months).

Although other circuits have reversed one-day sentences for those convicted of possessing child pornography, those cases involved larger variances, more serious crimes, and less compelling justifications. In *United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007), for example, the Seventh Circuit reversed as unreasonable a one-day sentence for a defendant who possessed *and* offered to distribute child pornography. *Id.* at 669. A psychiatric report indicated the defendant had "sociopathic traits" and that his

Commission's amendment of Section 2G2.2, increasing the penalties the Guidelines advise for possessing child pornography, but these unpublished decisions remain persuasive authority. Close examination of these cases is necessary because in *United States v. Prisel* we affirmed a one-day sentence and in *United States v. Camiscione* we vacated such a sentence as substantively unreasonable.

In *Prisel*, we affirmed a sentence of one day of imprisonment and three years of supervised release for a defendant convicted of one count of possessing child pornography. The defendant in that case possessed 1,189 images and had an adjusted offense level of 18, giving him a Guidelines range of 27-33 months. Reviewing the sentence for plain error, we noted that the record gave no indication that a variance of this magnitude would result in unwarranted sentencing disparities or that a non-custodial sentence would fail to protect the public. 316 F. App'x at 385. As at Stall's sentencing hearing, the government failed to cite any case involving a similar offender given a longer sentence and the district court supplied a number of reasons for varying downward, including testimony by the defendant's psychologist indicating the defendant posed little risk of reoffending. *Ibid.* (noting that the district court "believed that Prisel is a one-time offender, and that he is unlike many of the other defendants in similar cases the court had seen, in that he would not benefit from incarceration."). Under those circumstances, we held the government simply had not met its burden in demonstrating plain error.

Law enforcement officers recovered more than sixty-six times as many images from Prisel's computer than they did from Stall's. Although the government notes that Stall probably downloaded more than 18 images, there is no reason to believe he downloaded more than 1,189 images. Despite the fact that Prisel had more images, he had a lower Guidelines range than Stall because the base offense level for possession of child pornography has since been increased three levels and Stall received a four-level

misconduct had escalated to "voyeurism, scatological phone calls and the stealing of a 14 year old girl's panties." *Id.* at 673. Likewise, the Eleventh Circuit's reversal of a probationary sentence can be distinguished from Stall's because the defendant had also distributed child pornography and the sentence failed to include any term of supervised release. *Pugh*, 515 F.3d at 1194-95, 1202.

enhancement for possessing images of sadomasochistic conduct.[3] So even if we assume, all told, Stall downloaded fewer images than Prisel, the differences between Prisel and Stall cut in both directions.

Our second related case is *United States v. Camiscione*, 207 F. App'x 631 (6th Cir. 2006), in which we reversed a sentence of one day of imprisonment plus a three-year period of supervised release for a defendant convicted of one charge of possessing child pornography. *Id.* at 632. Camiscione had the same adjusted offense level and Guidelines range as Prisel. *Ibid.* Although his adjusted offense level and Guideline range were lower than Stall's, Camiscione had more than three times as many images. *Ibid.* We emphasized that the district court in sentencing Camiscione "neglected to consider and articulate how its sentence . . . deterred Camiscione from committing future crimes; protected the public from further crimes; and how this sentence avoided sentencing disparities." *Id.* at 637 (citations omitted).

In our case, the district court held an evidentiary hearing and made specific findings on each of these points in support of Stall's sentence. Specifically, the court noted at the sentencing hearing how a lengthy period of supervised release—more than two years longer than the total term of incarceration and supervised release recommended by the PSR and the Guidelines—would protect the public, deter Stall, and otherwise vindicate the sentencing factors outlined by the Guidelines. *Cf. United States v. Perrin*, 478 F.3d 672, 679 (5th Cir. 2007). And unlike in *Casmiscione*, where we reviewed the sentence only for reasonableness, here we are reviewing the sentence for plain error, which is more deferential, because the government did not present the arguments it now relies upon in asserting that a longer sentence of incarceration is necessary.

---

[3]Even though Prisel did not receive a four-level enhancement for possession of images of a sadomasochistic nature, he did order videotapes "depicting minors engaged in sexual acts and bondage." 316 F. App'x at 382. Moreover, Prisel was eligible for a five-level enhancement for possession of more than 600 images, but apparently he was given only a two-level enhancement for possession of more than 10 images. *Compare* U.S.S.G. § 2G2.2(b)(7)(D) *with* U.S.S.G. § 2G2.2(b)(7)(A); *Prisel*, 316 F. App'x at 379.

Although the district court's variance in sentencing Stall is greater than in *Prisel* or *Camiscione*, Stall's sentence is also longer in the sense that he was given a ten-year period of supervised release. Other mitigating circumstances, such as Stall's immediate and unconditional expression of remorse, provide still further reasons for the district court's decision, and are more compelling and extensive than in either *Prisel* or *Camiscione*. The district court may not have been compelled to believe Stall's psychologist or Stall's own assertion that he would never intentionally harm a child, but the record hardly makes its decision to do so impermissible. *See, e.g.*, *United States v. Beach*, 275 F. App'x 529, 533-34 (6th Cir. 2008) (holding that the district court's downward variance for possession and distribution of child pornography was reasonable in light of defendant's evidence that he was "a better candidate for rehabilitation than the typical sex offender").

Ultimately, even though we might have been inclined to impose a different sentence were we reviewing the record de novo, it is not our job to wear "the district judge's robe." *See, e.g.*, *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (per curiam). Downward variances for those convicted of possessing child pornography should not reflect a feeling that such offenders are more likely to have college degrees and participate in reputable professions. We do not believe criminals with privileged backgrounds are more entitled to leniency than those who have nothing left to lose. However, the posture of this case underscores the possibility that downward variances for possession of child pornography may have less to do with judicial bias and more to do with the failure of prosecutors to defend their sentencing recommendations vigorously. *See Prisel*, 316 F. App'x at 385 ("[A]lthough the government cited no comparable case at sentencing, Prisel's counsel pointed out a case from the same federal district, involving the same offense, and a sentence that included house arrest."). The Department of Justice's appeal of cases like this one may reflect legitimate concerns. Still, our authority to intervene is limited, especially in cases where a party never developed the underlying arguments of its appeal at the sentencing hearing and we have only a one-sided record to review.

The district court explained the scope of its variance in articulating how incarceration may undermine the defendant's treatment and render him more likely in the future to harm children. Given the district court's finding, which is not clearly erroneous, that Stall never had any improper contact with children and was unlikely to reoffend, we cannot say that Stall's sentence improperly weighed the evidence before the court. The duration and conditions of Stall's supervised release are sufficiently restrictive that it is difficult to imagine, let alone readily apparent, that other offenders will adopt a cavalier attitude about their possession of child pornography in view of the district court's decision. Had the government argued and given specific examples of how a variance of this magnitude would result in unwarranted sentencing disparities, the district court might have sentenced Stall within the Guidelines or at least not so far below the advisory range. Holding that the district court abused its discretion, however, would mean a longer sentence was not only permissible, but in fact mandated by the circumstances of this case. We do not believe that to be the case here, where the issues are not so devoid of reasonable disagreement that we can divine substantive unreasonableness in the district court's sentence.

### III

The government's next contention is that the district court erred in failing to discuss two of the relevant sentencing factors—namely general deterrence and "the need to avoid unwarranted sentenc[ing] disparities." *See* 18 U.S.C. § 3553(a)(2)(B) and § 3553(a)(6). Even though the government attempts to characterize this objection as substantive in nature, we are inclined to treat it as a distinct procedural claim because it concerns the quality, not the outcome, of the lower court's proceedings.[4]

In sentencing Stall, the district court named all of the statutory factors but did not undertake a discrete analysis of each one's application to this case. Yet it is not

---

[4]As the government notes in its brief, the distinction between procedural and substantive reasonableness is not always clear. Br. Appellant at 19 n.1 (citing *Bailey*, 488 F.3d at 368 n.1). And even though the United States did not contend that the district court committed procedural error, it preserved the point insofar as we hold its substantive arguments were more properly characterized as procedural arguments. Br. Appellant at 19 n.1.

necessary to use the words "deterrence" and "sentencing disparities" to render a sentence procedurally adequate. The district court's extensive analysis of how a ten-year term of supervised release would restrict Stall's freedom and protect the public explains why the district court believed this sentence will deter similar offenders and why this case warranted a variance. *Gall*, 128 S. Ct. at 599 (holding that "[s]ince the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." *Gardiner*, 463 F.3d at 464-66.

Even assuming the district court did fail to address the concerns of § 3553(a)(2)(B) and § 3553(a)(6), it would be unnecessary to vacate the district court's sentence because the government itself never mentioned either factor[5] in advocating for a sentence within the Guidelines and therefore these arguments are subject only to plain error review. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (stating that we will find plain error only in "exceptional circumstances . . . where the error is so plain that the trial judge . . . [was] derelict in countenancing it."). The government cannot possibly meet this standard as it is "not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative." *Gall*, 128 S. Ct. at 599. And therefore we decline to hold that the district court's sentencing of Stall reflects any procedural error, let alone a clear error affecting the integrity of the proceedings. Rather, we believe this is a case in which the district court weighed all the statutory sentencing factors and simply concluded that a substantial variance was warranted.

---

[5]The government's omission is especially egregious with respect to § 3553(a)(6) because the district court encouraged the parties to submit sentencing memorandum on this very issue and the government's submission did not cite a single case in which a comparable defendant was sentenced within the Guidelines. By comparison, the defendant cited a number of cases in which this Circuit and others have held that variances for possession of child pornography did not impermissibly undercut general deterrence or create unwarranted sentencing disparities.

IV

The government's final ground for appealing Stall's sentence is its assertion that the district court relied on a number of impermissible considerations in varying downward. *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007). In its sentencing memorandum to the district court, the government claimed that Stall's level of education, mental illness, and supportive family cannot permissibly support a variance under the Guidelines. In this appeal, the government repeats these claims and cites several additional considerations that the district court purportedly and impermissibly considered in sentencing Stall. They include the collateral consequences of being prosecuted for possession of child pornography, the fact that the defendant did not commit more serious crimes against children, and an unexplained reference to the "severity" of the Guidelines for this offense.

Among the purportedly mine-run facts relied upon by the district court include that Stall graduated from high school, performed at a "high level" in college, and was "an intelligent and accomplished student with a bright future ahead of him." There is some reason to question the court's description, as nothing in the record actually indicates Stall performed well in college. That said, the district court only identified these "mine-run facts" in the course of describing the history and characteristics of the defendant, and there is no indication that the court attached great weight to these considerations in deciding whether a variance was warranted in fashioning Stall's sentence. Br. Appellant at 28 (citing U.S.S.G. §§ 5H1.1, 5H1.2, and 5H1.6 of the Guidelines, which say the age, education, vocational skill, and family ties of a defendant are not *ordinarily* relevant in deciding whether a variance is warranted). To hold that the district court abused its discretion simply because it described the defendant's background, as the statutory sentencing factors require, would result in an untenable rule whereby district judges are forced to walk a tight-rope in sentencing proceedings: omitting details about the offense and the defendant will risk reversal on procedural grounds and referencing any fact that on its own might be an improper basis for the sentence will risk reversal on substantive grounds.

The government's argument that the district court improperly based its sentence on the fact that Stall had not engaged in related, more serious offenses rests on a similar misconception. Br. Appellant at 22 ("[Stall's] failure to engage in these other offenses is necessarily irrelevant to the seriousness of the offenses that he did commit."). At Stall's sentencing hearing, the district court noted that the defendant had never had inappropriate contact with a child, used the material to entice a child, reproduced the images, produced any of the images, or distributed any of the images—all assertions the record supported. In contending this observation was the basis of the district court's decision to vary,[6] the government disregards the context in which the court made this comment. The district judge was describing the facts of Stall's offense, not fashioning a sentence or putting forward a rationale for varying downward. Contrary to the government's assertions, the district judge repeatedly acknowledged "the severity and abhorrent nature" of Stall's offense and that possession of child pornography constituted "a very serious crime."

In a similar vein, the government objects to the district court's unexplained reference to the severity of the Guidelines for this offense. Again, the district court's statement appears to be a factual observation about the sentences advised for possession of child pornography, not an indictment of the Guidelines nor a reason being given for varying downward. Every indication in the record suggests the decision to vary downward was made primarily because the district court believed Stall was unlikely to reoffend with continued treatment. If anything, the district's discussion that other courts have taken the severity of the Guidelines into consideration appears to be less a justification for the district court's own decision to vary than an attempt to explain why

---

[6]This remains an open question on our circuit and we note only that the case on which the government relies has been called into doubt by intervening decisions by the Supreme Court. *Compare Borho*, 485 F.3d at 911 (holding that the district court "may not disregard a sentencing enhancement simply because the court disagrees with that enhancement as a matter of policy") (citing *United States v. Funk*, 477 F.3d 421, 428-30 (6th Cir. 2007), *cert. granted*, 128 S. Ct. 861, *vacated*, 534 F.3d 522 (6th Cir. 2008), *and appeal dismissed*, 560 F.3d 619 (2009)) *and id.* at 912 ("We fail to see how the facts relied upon by the district court present extraordinary circumstances justifying the large deviation in question.") *with Gall*, 128 S. Ct. at 595 (rejecting "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range") *and Spears v. United States*, 129 S. Ct. 840 (Jan. 21, 2009) (holding that district courts may vary from the Guidelines on the basis of categorical policy disagreements with the crack Guidelines).

a variance here on the grounds of rehabilitation would not result in an unwarranted sentencing disparity. In any case, the government never raised this claim below, and we cannot say on this record that the district court abused its discretion.

Somewhat more problematic is the district court's discussion of Stall's family and friends. The district court specifically acknowledged that "Stall's strong support network" factored into its sentencing determination. However, the district court's references to Stall's family and friends is not reversible error because the district court considered not the mere existence of family support, but the fact that Stall's family and friends had "promised to aid in his rehabilitation." While family ties of a defendant are not "ordinarily relevant," U.S.S.G. § 5H1.6, they may be relevant insofar as they bear some connection to permissible considerations. With respect to Stall, the district court believed Stall's "strong social support" was one reason to think that therapy would be effective, that a lengthy term of supervised release could adequately protect the public, and that a longer term of incarceration was unnecessary to vindicate the statutory sentencing factors. In this context, we cannot say this consideration was impermissible or that the district court abused its discretion.

The final consideration the government claims the district court impermissibly relied upon is the district court's discussion of some of the collateral consequences that Stall suffered by consequence of prosecution, including the interruption of his education and employment, the dissolution of his engagement, and the stigma attached to this specific offense. Characterizing the court's argument as one of leniency under § 3553(a)(2)(A)-(B), the government contends that these considerations do not properly support a variance because "every defendant who is prosecuted federally for possessing child pornography will have his career plans jeopardized and face significant prison time in the same manner as Stall." Br. Appellant at 25. We have never addressed whether collateral consequences of prosecution constitute a permissible grounds for leniency under § 3553(a)(2)(A), and we need not resolve this issue now. The government never objected to Stall's sentence on these grounds, and there is no evidence that the district court gave such significant weight to this consideration that even were it impermissible

to consider the collateral consequences of prosecution we would conclude the district court committed plain error.

Even assuming that the district court improperly considered the considerations cited by the government, the error would be harmless as the district court's decision to vary downward in sentencing Stall was supported by a number of other reasons, some no doubt permissible, such as the defendant's exceptional expression of remorse, immediate cooperation with the investigation, commitment to counseling, and demonstrated promise for rehabilitation.  *Grossman*, 513 F.3d at 598.  The district court's error constitutes an abuse of discretion only if these other reasons do not independently explain the district court's decision to vary downward.  *Id.* at 597-98.

V

For the foregoing reasons, we AFFIRM the district court's determination of Stall's sentence.

_____

**DISSENT**

_____

ROGERS, J., dissenting.   The one-day sentence in this case does not, with reasonable sufficiency, avoid disparity in sentencing or provide for general deterrence. I would therefore vacate the sentence as substantively unreasonable, and remand.